STATE EX REL. MALOTT ET AL., APPELLANTS, *v.* BOARD OF COUNTY COMMISSIONERS ET AL., RESPONDENTS.

(No. 6,557.)

(Submitted January 23, 1930.  Decided February 14, 1930.)

[285 Pac. 932.]

*Messrs. Gunn, Rasch, Hall & Gunn,* for Appellants, submitted an original and a reply brief; *Mr. M. S. Gunn* argued the cause orally.

*Mr. C. E. Baker, Mr. C. W. Robison, Mr. Ralph J. Anderson, Mr. E. G. Toomey* and *Mr. M. R. Olbrich,* of the Bar of Wisconsin, for Respondents, submitted an original and a supplemental brief; *Mr. Anderson* and *Mr. William Ryan,* of the Bar of Wisconsin, of Counsel, argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action in mandamus, instituted in the district court of Fergus county, to compel the respondents to make an order requiring the county clerk to apply to the county treasurer for tax deeds in favor of Fergus county to certain lands which were sold to the county for delinquent irrigation district and general taxes. An alternative writ was issued. An answer was filed, to which a general demurrer was interposed. The demurrer was overruled, and judgment thereupon entered upon the pleadings, quashing the alternative writ and awarding the respondents their costs, from which this appeal is prosecuted.

The only question involved, necessary for determination, is whether the court, upon the admitted facts, was in error in quashing the alternative writ, thus denying to the relators the relief sought.

It is averred by the relators that the Judith Basin irrigation district now is, and since before January 1, 1920, has been an irrigation district and public corporation, organized and created under the laws of Montana, and that all lands included in such

district lie within the boundaries of Fergus county; that prior to January 1, 1920, such district authorized the issuance of bonds by the district to the aggregate amount of $160,000, and provided for the levy of a special tax or assessment on all lands embraced within the district, for the benefit of which the district was organized, in an amount sufficient to pay the interest on and the principal of the bonds when due; that thereafter the above-entitled court, by a judgment duly given, made, and entered, ratified, approved and confirmed such bonds and the proceedings of the board of commissioners authorizing the issuance thereof and the special tax or assessment, which judgment has become final; that all of the authorized bond issue was sold and delivered prior to April 15, 1921, and that the relators are now the owners and holders of $156,000 of the bonds so authorized and sold with the unpaid interest coupons attached. Further, it is made to appear that no part of the principal of the bonds has been paid and that default has been made in the payment of interest thereon to an aggregate amount in excess of $20,000; that taxes or assessments were levied by the district in the year 1920, and subsequent years, for the payment of the principal and interest on the bonds, and that the taxes or assessments so levied, together with the general taxes on lands embraced within the district, became delinquent, and in consequence the lands were sold to the county and certificates of tax sale duly issued to it; that there has been no redemption, and the county was on the date the relators filed their verified petition (August 30, 1928), and for more than eighteen months prior thereto had been, entitled to tax deeds for all of the land; that the relators have demanded of the board of county commissioners of the county, and the members thereof, that they direct the county clerk to make application to the county treasurer for the issuance of tax deeds to the county, which the board of county commissioners has refused to do, by reason whereof a writ of mandate is sought.

The answer of the respondents is voluminous, alleging, among other things, certain irregularities in the proceedings of the

irrigation district leading up to the issuance and sale of the bonds, in consequence whereof the bonds are said to be illegal and void; that the meetings of the commissioners of the irrigation district were held in the city of Lewistown, outside the boundaries of the district, contrary to the law, and that therefore not only were the bonds illegal, but the attempted tax or assessment of the land within the district was void; that the bonds are illegal because sold to the Spokane & Eastern Trust Company, whose directors the relators are, for less than ninety per cent of their par value and accrued interest thereon to date of delivery; and that Chapter 54 of the Laws of 1923, passed by the legislature, curative of defects in the organization of irrigation districts, and in order to validate irrigation district bonds, is without application to the bonds in question. It is further alleged that neither of the relators are holders of the bonds in suit in due course, and that therefore the bonds are by them held subject to all of the defects and defenses pleaded, and that the taking of tax deeds for property sold to the county for delinquent taxes is vested solely in the discretion of the board of county commissioners. No question is raised relative to the legality of the organization of the district; the sole purpose of this proceeding being to compel the performance of a duty, alleged to be ministerial in character, placed upon the board of county commissioners, in the performance of which it is argued it is not vested with discretion.

The question presented for decision is whether a duty rests upon the board of county commissioners to direct the county clerk to apply to the county treasurer for tax deeds to the lands in favor of Fergus county.

A reference to the statutes under which the bonds were attempted to be issued and sold is proper to be made. Section 7210 of the Revised Codes of 1921 authorizes the land owners within the district to petition the board of commissioners of an irrigation district to issue negotiable coupon bonds of the district for district purposes therein enumerated, which petition must be signed by at least a majority in number and acreage of the holders of title or evidence of title to lands included

within the district, and thereupon the board of commissioners is empowered by appropriate order or resolution to authorize and direct the issuance of bonds of the district to the amount and for the purposes specified in the petition, and to fix the numbers, denominations, and the maturity of such bonds. And section 7211 provides for the filing by the board of commissioners of a petition in the district court to determine the validity of the proceedings had relative to the issuance of the bonds and the levy of the special tax or assessment for their retirement, it being thereby provided that the district court shall, after hearing, make determination as to whether the provisions and requirements of section 7210 have been complied with, and determination as to the regularity, legality, and validity of all proceedings had preliminary to the issuance of the bonds and the levy of the special tax or assessment, and the legality of the actions of the board of commissioners of the irrigation district with respect thereto; such judgment is final unless an appeal is taken to the supreme court within ten days from its entry—and, further, that "the court, in inquiring into the regularity, legality, and validity of said proceedings, shall disregard any error, omission, or other irregularity which does not affect the substantial rights of the parties to said proceedings. * * * Such judgment or decree shall be forever conclusive upon all the world as to the validity of said bonds and said special tax or assessment, and the same shall never be called into question in any court in the state."

Section 7214 provides in part: "Bonds issued hereunder * * * shall never be sold for less than ninety per cent of their par value and accrued interest thereon to date of delivery."

Section 7246: "When the lands and premises so sold for taxes, and upon and against which the certificates herein provided for have been issued for the taxes and assessments of such irrigation district, are not redeemed within the time provided for by section 2201 of these codes, it shall be the duty of the board of county commissioners of said county, within three months thereafter, to cause said lands and premises to

be sold as provided for by section 2235 of these codes, and out of the proceeds of the sale thereof the county treasurer of said county shall pay to the holder or holders of such certificates the sum or sums for which the same were issued, with interest as therein provided for to the date of said sale of said lands by the board of county commissioners, and no lands and premises so held by any county, and against which the certificates provided for by this title have been issued, shall, upon such sale, be struck off or sold for a less sum than the amount of taxes and assessments of said irrigation district represented by said certificates, inclusive of the interest thereon, in addition to the state and county taxes, if any, against the same."

Sections 2201 and 2235, referred to in the statute just quoted, read as follows:

Section 2201: "A redemption of the property sold may be made by the owner, or any party interested, within thirty-six months from the date of the purchase, or at any time prior to the giving of the notice and the application for a deed, as provided for in this Act."

Section 2235: "Whenever the county has become the purchaser of any real estate sold for delinquent taxes, and the same has not been redeemed by the person entitled so to do, and the time for such redemption has expired, the board of county commissioners may at any time, by an order made and duly entered upon the minutes of its proceedings, sell the same at public auction; provided, however, that no such sale shall be made or confirmed unless the price offered shall be sufficient to discharge all accrued taxes to date of sale, together with interest and costs, but if the price so offered shall be the reasonable market value thereof, in the judgment of said board of county commissioners, then the said board is authorized to accept said price so offered, and the chairman of said board is authorized to execute a title therefor vesting in the purchaser all the title of the state and county to the real estate so sold. The money arising from such sale must be paid into the county

treasury, and the treasurer must settle for money so received as other state and county money."

Pursuant to the law, an order was duly signed by the judge, constituting a part of the files in the proceedings, although not entered in the minutes of the court, adjudging that the proceedings for the issuance of bonds to the amount of $160,-000 are and were in all things regular, legal and valid, and that the provision for the levy of a special tax was and is in all respects legal and valid, and decreeing "that due and legal notice * * * has been given as required by law, and that the board of commissioners of the said Judith Basin Irrigation District be, and it hereby is authorized and directed to make, execute and deliver said bonds for and on behalf of the said Judith Basin Irrigation District, and as the binding and lawful obligation, to any purchaser purchasing the same in the manner required by law, and said commissioners are hereby also authorized and directed to levy the special tax provided by law in a sum sufficient for the purpose of the said district. Done in open court this 29th day of December, 1919."

And in the bonds issued and sold, and now held by the relators, it is recited that "all of the lands included within said irrigation district are subject to a special tax or assessment for the payment of interest on, and the principal of, all of said bonds, and said special tax and assessment are declared by the laws of Montana to constitute a first and prior lien on the land against which it is levied, to the same extent and with like force and effect as taxes levied for state and county purposes"; and, further, that "the issuance of all of said bonds and the levy of said special tax and assessment have been adjudged valid and legal by the district court of the state of Montana, in and for Fergus County, upon proceedings had in said court."

Admittedly, the district received upon sale of the bonds and has used for its purposes eighty-six and one-half per cent of the face value thereof.

The lands embraced within the irrigation district were sold to the county for delinquent irrigation and general taxes;

certificates of the sale were duly issued to and are now held by the county; and the time allowed for redemption has expired.

It is urged by the respondents that (1) the bonds in question are illegal and void because of irregularity in the proceedings authorizing their issuance and sale; and (2) that, even though they be considered valid obligations, the board of county commissioners may not be compelled to apply for deeds to lands sold to the county for delinquent taxes, because it is by the statute vested with judgment and discretion as to when, if at all, such application shall be made.

1. Among other irregularities in the issuance of the bonds, ▮ and one on which the respondents principally rely is that the judgment of the court authorizing and confirming the bonds to be issued, and the assessment or tax for their payment with interest, was never entered in the minutes of the court. It is also urged that the place of meetings of the irrigation commissioners was not held within the confines of the district, although it was within the county, and that the bonds were in fact sold for less than ninety per cent of their par value. These are all objections capable of being cured by validating enactments.

Whatever merit there may be in the respondent's position as to the irregularity of the proceedings authorizing the bonds, certain curative statutes were subsequently enacted by the legislative assembly, the effect of which is, in our opinion, determinative of the questions involved. By section 4024 of the Revised Codes of 1921, enacted by Chapter 153, Laws of 1921, it is provided in part as follows: "Nothing in this Act shall be construed as to affect the validity of any district heretofore organized under the laws of this state, or its rights in or to property, or any of its rights or privileges of whatsoever kind or nature; nor shall it affect, impair or discharge any contract, obligation, lien, or charge for, or upon which it was or might become liable or chargeable had not this Act been passed; nor shall it affect the validity of any bonds which have been issued but not sold. And where districts have

heretofore been organized, or bonds authorized, issued or sold or any proceedings have been undertaken on the theory that under the laws as they then existed, assessments might be assessed, levied or collected, such organization, authorization, issuance or sale of bonds, and any and all such proceedings are hereby validated, cured and confirmed.''

However, it is argued that, since section 4024 of the Revised Codes of 1921 was repealed by Chapter 75 of the Laws of 1929, the curative effect, if any, upon the bonds under the provisions of the first-mentioned statute has been removed. The repeal was not intended to affect existing contractual obligations, even though such a thing were possible, as is manifested by its express provisions "that the several repeals affected by this Act shall not operate upon, affect, or in any manner impair the irrigation districts which have organized and incurred indebtedness pursuant to the provisions of the above mentioned sections [including section 4024], or any of them, * * * and as to said districts, the said sections and amendments shall remain in full force and effect.''

By section 2 of Chapter 54 of the Laws of 1923, a new section is added to the Revised Codes of 1921, designated as section 7231A, which reads as follows: "No suit, action or proceeding shall be brought in any court in this state attacking the validity or regularity of any order or decree of the court purporting to establish a district hereunder or correcting or amending any order or decree creating a district after the expiration of six months from the date of the recording of the order establishing the district or the order correcting or amending the same. All districts heretofore established by order of the court and having a *de facto* existence of at least one year, are hereby declared to be valid and legally created subdivisions of the state, and the regularity and validity of the creation of such districts or of the proceedings had for the extension of the boundaries thereof shall not be open to question in any court in this state, and all acts and proceedings of any such district and of its board of commissioners leading up to the authorization, issuance or

sale of bonds or the proposed issuance or sale of bonds, are hereby legalized, ratified, confirmed and declared valid to all intents and purposes, and all such bonds whether sold heretofore or hereafter are hereby legalized and declared to be valid and legal obligations of and against the irrigation district so issuing and selling the same."

"Although the legislature cannot compel a municipal corporation to make a mere gratuity, it may compel such a body to recognize and to pay debts not binding in strict law; and which, for technical reasons, could not be enforced in equity, but which, nevertheless, are just and equitable in their character and supported by moral obligation. By virtue of this principle it is held that if bonds have been issued, and the municipality has received the proceeds of them, but they are invalid because of some act or omission, and the legislature originally had power to authorize their issuance, notwithstanding such act or omission, it may, by subsequent legislation, validate them, and thus make them enforceable against the municipality and its citizens and taxpayers. It may, therefore, cure irregularities in the proceedings prior to the issuing of the bonds." (19 R. C. L., p. 1025, sec. 317.)

In *Henderson* v. *School District*, 75 Mont. 154, 242 Pac. 979, it was by this court held that an action to enjoin an election for a bond issue by a school district on the ground that the district was not originally legally created would not lie where the district had functioned for a period of five years, and the taxpayers, including the plaintiff, had acquiesced therein by paying taxes levied, even though the record disclosed that the plaintiff had no knowledge of the creation of the district until shortly before the action was commenced, and this because of the confusion into which a judgment that the organization was void would throw public and private rights and interests acquired through years of operation with the acquiescence of the inhabitants.

And in the case of *Scilley* v. *Red Lodge-Rosebud Irr. Dist.*, 83 Mont. 282, 272 Pac. 543, 550, considering the effect of such curative legislation, Mr. Justice Matthews, speaking for this

court in a very exhaustive and well-considered opinion, said, and we think correctly and here applicable, that "our legislature has, by fiat, done everything in its power to render the rule of public policy announced in the *Henderson Case,* above, applicable to irrigation districts as against all the world, and has attempted, by statute, to guard against and to relieve such public corporations from the effect of every conceivable error or irregularity which may have crept into the proceedings had for their creation, particularly after such corporations have issued and sold bonds and otherwise functioned and done business with the public for a year or more. This endeavor on the part of the legislators is laudable, for if, after years of such operations, the creation of a district may be declared invalid, wholesale ruin and disaster may follow within and without the territory included within the supposed district; bondholders be stripped of their security for money loaned in good faith, and future worthy projects be subject to suspicion and distrust. For these reasons, courts should declare against the validity of the organization of such going concerns only for the most cogent reasons, and when irresistibly compelled to such a course. 'The control of *remedies,* exercised by the enactment of laws to cure defects in previous statutes, or to supply former omissions and legalize past acts, is one of the most essential of legislative powers.' 'The principle upon which curative or "healing" Acts, or Acts legalizing past transactions, are based, is stated by Judge Cooley in the following language: "If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something which the legislature might have dispensed with the necessity of by a prior statute, then a subsequent statute dispensing with it retrospectively must be sustained." (Cooley's Constitutional Lim. 371.)' (Wade on Retroactive Laws, 291, 292.) A party to an action has no vested right in a defense based upon informalities not affecting his substantial equities, and the legislature may deprive him of such a right (Cooley on Constitutional Lim., 7th ed., 528), and con-

versely, the legislature may properly deprive a party of the right to attack a judgment or order on the ground of such irregularities, but the very rule itself prohibits the validating of a judgment affecting substantial property rights where the judgment was obtained against the owner without bringing him or his property within the jurisdiction of the court rendering the judgment; as such a judgment never had life, there can be no hope for the resurrection of it. (*Shapard* v. *City of Missoula*, 49 Mont. 269, 141 Pac. 544; *Billings Bench Water Assn.* v. *Yellowstone County*, 70 Mont. 401, 225 Pac. 996; Cooley's Constitutional Lim., 7th ed., 530; Freeman on Judgments, sec. 117; 34 C. J. 510.)''

However, the respondents seek to avoid the effects of the █ curative statutes by challenging their constitutionality. Presumably this legislation is constitutional. Every intendment is in its favor, and, to be held unconstitutional, its unconstitutionality must appear beyond a reasonable doubt (*Gas Products Co.* v. *Rankin*, 63 Mont. 372, 24 A. L. R. 294, 207 Pac. 993; *State ex rel. Stephens* v. *Keaster*, 82 Mont. 126, 266 Pac. 387), and the burden of showing that the authority of the legislature to enact a given statute, inherent except as restricted by the state and federal Constitution did not exist, is upon the party who questions the validity of the Act. (*Hilger* v. *Moore, County Treasurer*, 56 Mont. 146, 182 Pac. 477.) The respondents base their attack upon the provisions of section 13 of Article XV, section 27 of Article III, section 23 of Article V, and section 1 of Article VIII, of the Constitution of Montana, and the Fourteenth Amendment to the Constitution of the United States, the provisions of none of which in effect restricts or prohibits such enactments. The respondents will not be permitted to shield themselves in the performance of a duty under such guise, where, as here, the provisions of the Constitution relied upon are manifestly without application.

2. By an Act of 1927 it is provided: ''Whenever a county, city or town has become the purchaser of property sold for delinquent taxes, and is the holder of the certificate of sale

when the time for redemption expires, the board of county commissioners, city or town council or commission, at any time thereafter deemed proper, may order and direct the county clerk, city or town clerk, to apply to the county, city or town treasurer, as the case may be, for the issuance to the county, city or town, of a tax deed for such property, and it shall then be·the duty of the county clerk, city or town clerk, to give or post and cause to be published the proper notice of the application for such tax deed and to make the proper proof thereof, all in the manner required by Section 2209 Revised Codes of Montana 1921." (Chap. 92, Laws of 1927.)

It is urged that, by reason of the language employed in the ▮▮ statute last above quoted, express discretion is vested in the board of county commissioners, to direct the county clerk, *only when by it deemed proper,* to apply for the issuance of tax·deeds, and that its judgment and discretion so conferred may not be coerced.

Although the language of the statute is in form permissive as to when tax deeds in favor of the county shall be applied for, yet, since it concerns the rights of the public and of third persons, it must be construed as mandatory. The recognized rule is that, where a public body or officer has been clothed by statute with power to do an act which concerns the public interest or the rights of third persons, the execution of the power may be insisted upon as a duty, although the phraseology of the statute be permissive and not mandatory. (*Montana Ore Purchasing Co.* v. *Lindsay,* 25 Mont. 24, 63 Pac. 715; *Mayor etc. of City of New York* v. *Furze,* 3 Hill (N. Y.), 612.) As was well expressed by the supreme court of the United States: "What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless. In all such cases it is held that the intent of the legislature, which

is the test, was not to devolve a mere discretion, but to impose 'a positive and absolute duty.' The line which separates this class of cases from those which involve the exercise of a discretion, judicial in its nature, which courts cannot control, is too obvious to require remark." (*Rock Island County* v. *United States ex rel. State Bank,* 4 Wall. (U. S.) 435, 447, 18 L. Ed. 419.)

The sovereignty of the state of Montana for public welfare has authorized the organization of irrigation districts in the state in aid of agricultural development; it has given recognition of them as municipal corporations, clothed them with authority to issue and sell bonds upon the faith and credit of the district for the purpose of obtaining requisite financial assistance, and assured investors in such bonds of their payment through the machinery of the law. Admittedly, the irrigation district has had the use and benefit of the money obtained on sale of the bonds for its purposes, and to now permit the board of county commissioners to frustrate their payment from the lands embraced in the district upon technical grounds, or because of alleged discretion vested in it, would work a manifest fraud and injustice upon innocent parties who have honestly and fairly parted with their money in reliance upon the faith and credit of the irrigation district and the protection afforded by the laws of the state. Public municipalities should be held to the strictest accountability in payment of their obligations according to law, so as not to reflect discredit upon them or the state.

Nothing by us said herein is to be taken as an intimation that the county, by taking deeds to the lands involved, may thus be rendered liable for the payment of assessments on the property, either past, present or future. That question is not now before us; however, attention is called to the decision of the supreme court of Washington in the case of *State ex rel. Clancy* v. *Columbia Irr. District,* 121 Wash. 79, 208 Pac. 27, and the dissenting opinion therein dealing with this important subject.

The judgment is reversed and the cause remanded to the district court of Fergus county, with directions to issue a peremptory writ of mandamus forthwith.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and FORD concur.

MR. JUSTICE ANGSTMAN, deeming himself disqualified, takes no part in the foregoing opinion.

Rehearing denied March 19, 1930.