STATE EX REL MALOTT ET AL., APPELLANTS, *v.* CASCADE COUNTY ET AL., RESPONDENTS.

(No. 7,049.)

(Submitted April 26, 1933. Decided June 7, 1933.)

[22 Pac. (2d) 811.]

396

*Messrs. Gunn, Rasch, Hall & Gunn,* for Appellants, submitted an original and a reply brief; *Mr. M. S. Gunn* argued the cause orally.

*Messrs. Freeman, Thelen & Freeman, Mr. Frank P. Gault* and *Mr. Charles Davidson,* respectively County Attorney and Deputy County Attorney of Cascade County, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

*Mandamus.* It appears in this proceeding that certain lands of the defendant McDaniel within the Chestnut Valley irrigation district were sold to Cascade county for delinquent general taxes and irrigation district assessments on January 20, 1928, and that on April 23, 1931, the county treasurer executed and delivered to defendant Thelen, for the sum of $1,386.83 then paid by him, a so-called assignment of all the right, title, and interest "so acquired by virtue of said tax sale of Cascade county in and to the land, together with all the rights, powers and privileges of the said county of Cascade to take steps to receive a tax deed therefor, or to receive payment in case of redemption of said lands from said tax sale." The county treasurer, upon receiving the money, took out the amount of general taxes, penalties and interest and credited to the "bond, principal and interest fund" of the irrigation district the remainder, being the amount of the irrigation district assessment for which the land was sold, together with penalty and interest, $1,260, and thereupon sent to Conner Malott, one of the plaintiffs, a check therefor. Malott did not present the check for payment, but at the commencement of this proceeding surrendered it for cancellation and deposited it with the clerk of the district court.

Plaintiffs alleged (and later proved) that the fair market value of the land is in excess of $20 per acre, and the indebt-- edness evidenced by the bonds and coupons unpaid, for the payment of which the lands are liable for assessment by the irrigation district, is in excess of $35 per acre. Plaintiffs prayed for the issuance of a writ of mandate commanding the board of county commissioners to order . the county clerk to apply to the county treasurer for issuance of a tax deed to the land; commanding the treasurer upon receiving proper proof of the giving of notice of the application by the county clerk, in the event there had been no redemption, to execute to the county a tax deed; and commanding the board of county commissioners thereupon to fix the fair market value of the land and advertise and sell it as required by law.

An alternative writ of mandate was issued, and thereafter an answer was filed by defendants Thelen and McDaniel and also by the county. After hearing testimony, the court dismissed the proceeding and entered judgment for the defendants, from which plaintiffs have appealed.

Chestnut Valley irrigation district was organized under the provisions of Chapter 146 of the Session Laws of 1909 and Acts amendatory thereof, for the purpose of providing water for the irrigation of the lands embraced therein, aggregating about 4,540 acres. Prior to July 1, 1920, in furtherance of this project, the board of commissioners of the district authorized and directed the issuance of the bonds of the district to the amount of $140,000, and provided for the levy of a special tax on all of the lands therein for the benefit of which the district was organized, sufficient in amount to pay the interest on and the principal of the bonds when due, all of which was duly confirmed by a judgment of the district court of Cascade county. In due time all the bonds were sold, and now the plaintiffs, who constitute a bondholders' committee, are the holders of all of them.

This is the third case growing out of the creation of this district and the existence of these bonds, with which this court has been confronted; the others were *Cosman* v. *Chestnut Val-*

398

*ley Irr. Dist.*, 74 Mont. 111, 238 Pac. 879, 881, 40 A. L. R. 1344, which we shall refer to as the *Cosman Case,* and *State ex rel. Malott* v. *Board of County Commissioners of Cascade County,* 89 Mont. 37, 296 Pac. 1, which we shall call the *Malott Case.*

An irrigation district is a public corporation for the promotion of the public welfare. (Sec. 7169, Rev. Codes 1921.) "The sovereignty of the state of Montana for public welfare has authorized the organization of irrigation districts in the state in aid of agricultural development; it has given recognition of them as municipal corporations, clothed them with authority to issue and sell bonds upon the faith and credit of the district for the purpose of obtaining requisite financial assistance, and assured investors in such bonds of their payment through the machinery of the law." (*State ex rel. Malott* v. *Board of County Commrs.*, 86 Mont. 595, 285 Pac. 932, 937.)

It is hornbook law that the applicable statutes were as much a part of the bonds as if expressly written into them. Sections 7213 and 7232, Revised Codes 1921, portions of the Irrigation District Law when the bonds were issued and sold, provide in part as follows:

"7213. All bonds issued hereunder * * * shall be a lien upon all the lands originally or at any time included in the district for the irrigation and benefit of which said irrigation district was organized and said bonds were issued, * * * and all such lands shall be subject to a special tax or assessment for the payment of the interest on and principal of said bonds; * * * and said special tax or assessment, shall constitute a first and prior lien on the land against which levied, to the same extent and with like force and effect as taxes levied for state and county purposes.

"7232. * * * All the lands in the district at the time said bonds are issued * * * shall be and remain liable to be taxed and assessed for the payment of said bonds and interest."

Each of the bonds contained this provision: "All of the lands included within said irrigation district are subject to a special tax and assessment for the payment of interest on, and the principal of, said bonds, and said special tax and assessment are declared by the laws of Montana to constitute a first and prior lien on the land against which it is levied, to the same extent and with like force and effect as taxes levied for state and county purposes."

Prior to the year 1926 the owners of over 4,000 acres of the lands included in the district, but not including those of Mc-Daniel, failed to pay the assessments and taxes levied against the lands, and at tax sales the same were struck off by the county treasurer to Cascade county. Thereafter the county applied for and obtained tax deeds for the same. Mrs. Mc-Daniel failed to pay the assessments and taxes levied against her lands for the year 1927, resulting in the sale thereof to the county as stated above.

Section 7242 reads as follows: "Delinquent sales of land for unpaid taxes or assessments shall be made in the same manner as for state and county taxes in the respective counties where such lands are situated, and the right of redemption shall in all cases be made the same as in cases where lands are sold for state or county taxes."

Section 7243 provides, in part, that whenever, pursuant to the provisions of section 7242, any parcel of land which forms a part of an irrigation district shall be struck off to the county pursuant to the provisions of section 2191, Revised Codes 1921, the county treasurer must, upon the issuance of a certificate of tax sale to the county, issue to the irrigation district in its corporate name a debenture certificate for the amount of taxes and assessments due to the irrigation district from the lands sold, inclusive of the interest and penalty thereon, "which certificate shall be evidence of and conclusive of the interest and claim of said irrigation district in, to, against, and upon the lands and premises so struck off to said county at such tax sale, and from and after the issuance of said certificate, the sum named therein and the taxes and assessments

of said district evidenced thereby shall bear interest at the rate of one per centum per month from the date of said certificate until redeemed in the manner provided for by law for the redemption of the lands sold for delinquent state and county taxes, or until paid from the proceeds of the sale of the lands and premises described therein, in manner provided for by section 2235 of these Codes, and duplicates of such certificates so issued to said irrigation district shall be filed in the office of the county clerk and county treasurer of said county with the certificate of tax sale of said lands and premises.''

Under the provisions of section 2191, when property is sold at tax sale the county treasurer must issue to the purchaser a certificate of sale which is made in duplicate, one copy being given to the purchaser (sec. 2194), and the other filed in the office of the county clerk (sec. 2195). ''In case there is no purchaser in good faith for the same, as provided in this chapter, on the first day that the property is offered for sale, then when the property is offered thereafter for sale and there is no purchaser in good faith for the same, the whole amount of the property assessed must be struck off to the county as the purchaser, and the duplicate certificate delivered to the county treasurer and filed by him in his office. No charge must be made for the duplicate certificate when the county is a purchaser; and in such case the county treasurer must make an entry, 'Sold to the County,' on the duplicate assessment-book opposite the tax.''

Section 7244 provides that the debenture certificates which the county treasurer must issue when the county is the purchaser of irrigation district land shall be assignable and may be sold or negotiated by the board of commissioners of the irrigation district, and the proceeds shall be deposited with the county treasurer for proper credit to the respective funds of the district, and, upon the sale, negotiation or transfer thereof, the lien of the district shall vest in the purchaser thereof to be divested only by the payment to the purchaser or county treasurer for his use of the sum for which the certificate is

issued, and one per cent. additional for each month that elapses from the date of the certificate until redeemed.

It is noteworthy that only the commissioners of the irrigation district may sell the debenture certificates, and the reason is obvious: it is to finance the necessary operations of the district. If the land is redeemed, the county treasurer must "pay to the holder or holders of such certificate or certificates the sums for which the same were issued, with interest as therein provided to the date of the redemption of said lands." (Sec. 7245.)

Section 7246 prescribes that, when lands sold for taxes, and against which the debenture certificates have been issued for the taxes and assessments of such irrigation district, are not redeemed within the time provided for by section 2201, which is the general statute relating to the redemption of lands sold at tax sales, "it shall be the duty of the board of county commissioners of said county, within three months thereafter, to cause said lands and premises to be sold as provided for by section 2235 of these Codes, and out of the proceeds of the sale thereof the county treasurer of said county shall pay to the holder or holders of such certificates the sum or sums for which the same were issued, with interest as therein provided for to the date of said sale of said lands." In this case there was not any redemption.

Summing up these statutes, it is seen that, upon the issuance of the debenture certificates, the irrigation district, or its vendee, is the owner of an interest in the land, which is never divested until the land is redeemed or sold. The debenture certificate has little, if any, relation to the certificate of purchase provided for in section 2191; the two are separate and distinct. The county has no right, title or interest whatever in the debenture certificate. In the absence of express statutory authority, the treasurer could not assign a debenture certificate. He has not any such authority. With respect to this, his only function is to pay the holder of the debenture certificate in case the property is redeemed.

May he assign to a purchaser the "right" of the county to irrigation district lands struck off to the county at tax sale, thus enabling the purchaser, in the absence of redemption, to procure a deed to the land? No such power was reposed in the county treasurer by Chapter 146, supra, or by Chapter 127 of the Laws of 1913, nor by any of the Acts amendatory of either of those chapters, when this district was created and the bonds were sold. Such authority, it is argued, is granted by section 2207, a general statute enacted as section 1 of Chapter 151 of the Laws of 1917, which reads in part as follows: "At any time after any parcel of land has been bid in by the county as the purchaser thereof for taxes, as provided in section 2191, the same not having been redeemed, the county treasurer shall assign all the right of the county therein, acquired at such sale, to any person who shall pay the amount for which the same was bid in, with interest thereon at the rate of one per cent. per month, and the amount of all subsequent delinquent taxes, penalties, costs, and interest, as provided by law, upon the same from time to time when such tax became delinquent." This position is not tenable:

(1) When the purpose of the Irrigation District Law is considered, and section 2207 is analyzed with reference thereto as well as with companion statutes (including section 2208), it is readily seen that it is not applicable to irrigation district lands struck off to the county at tax sale.

In a sense irrigation district assessments are taxes. (*Thomas* v. *City of Missoula,* 70 Mont. 478, 226 Pac. 213.) But they are not taxes within the purview of section 2207, for the reasons given in the *Malott Case,* 89 Mont. 37, 296 Pac. 1. Nothing said in *Thomas* v. *City of Missoula* is to the contrary. There the court was considering the question of the collection of "special improvement taxes." A special improvement district is the creation of a city council for making special improvements within the city, and is widely different from an irrigation district, a public corporation. There are no sec-

tions in the statutes relating to special improvement districts comparable to sections 7243, 7244, 7245 and 7246, supra.

(2) Section 2207 authorizes the treasurer to assign "the right of the county therein," nothing more. The county has no right in the debenture certificates *which carry an interest in the lands.* (Sec. 7243, supra.)

(3) When the lands are struck off to the county and the debenture certificates are issued as required by the law, the county occupies the position of a trustee for the interested parties, including, of course, the bondholders. "If the land is struck off to the county, the irrigation district receives a debenture certificate showing the amount of its delinquent tax and its equitable interest in the land, legal title to which is in the county." (*Cosman Case,* supra.) "It will be borne in mind that the state and the county, as well as the bondholders or the holders of the debenture certificates, have an interest in the land." (*Malott Case,* 89 Mont. 37, 296 Pac. 1, 8.)

The county, as trustee, cannot lawfully do anything adverse to the rights of the bondholders, beneficiaries under the trust. After issuing the debenture certificate it can perform but two acts (or related acts) with respect to the lands: (1) Receive money paid upon redemption and distribute the same; (2) obtain a deed to the lands, sell the same, and distribute the money received upon the sale. If the treasurer's assignment to defendant Thelen is valid, he may, in the absence of redemption, apply for and secure a deed to the land which will give him a title free and clear of the lien of the bonds, and to that extent the bondholders will have lost their security.

It is argued that Mr. Thelen could have purchased the property when it was offered at tax sale, and, barring redemption, he could obtain a deed for the property, which would obviate the lien of the bonds. This is true, but an individual dealing at arm's length in purchasing property at a tax sale is in a different position from that of a governmental agency operating under statutory direction as a trustee. Had Thelen purchased the property at the tax sale, no debenture certificate would have been issued.

From the facts in the record and others necessarily implied, it appears that the land owners within what became the Chestnut Valley irrigation district, desiring to obtain water for the irrigation of their lands, set up a district, and, in order to get money to carry to a successful conclusion the irrigation project, sold bonds in accordance with the statutes of Montana, pledging all of the lands within the district for the payment of the bonds and the interest thereon. Those, or their predecessors in interest, now represented by the bondholders' committee, relying upon the validity of the bonds and the security back of them, advanced the money which enabled the irrigation district to construct the necessary works of irrigation. When the land owners failed to pay the taxes and assessments levied pursuant to the statutes, their lands were offered at tax sales held by the county treasurer, and, no one bidding therefor, the same were struck off to the county. The county has obtained title by deed to 4,300 acres. If, instead of taking title to the lands and afterwards selling them at a fair market value, paying the proceeds pro rata to those entitled thereto, and turning over the balance to the district for the benefit of the bondholders, as the law commands, the treasurer could have assigned "rights" therein to a third person thereby enabling him to obtain deeds therefor, the land owners would have lost their lands, and the bondholders their security, and the third person would own the lands and the irrigation system, all bought for a pittance of their worth. Common fair dealing denies a construction of the law which permits any such result; to so hold would be an affront to justice. That course would set at naught sections 7213 and 7232 of the statutes which became part of the contract between the district, and the purchasers, when the bonds were sold, would, by a device amounting to a subterfuge, impair the substantial rights of the bondholders, and to a considerable extent nullify the decision in the *Malott Case*, 89 Mont. 37, 296 P. 1.

But, it is said by counsel for defendants, under the express directions of section 2235, as amended by Chapter 85, section 3, of the Laws of 1927, upon a sale of the lands the

excess over the amount of taxes, penalties, and interest "shall be credited to the general fund of the county." This provision is inoperative so far as it affects irrigation districts and those interested therein. Such direction with respect to the "excess" is contained in a change in the law enacted after the contract was made, directly affects its discharge and enforcement, and to that extent impinges upon section 10 of Article I of the federal Constitution, which provides that "no state shall * * * pass any * * * law impairing the obligation of contracts."

Defendants also call attention to Chapter 89 of the Laws of 1925, which authorizes an irrigation district to set up a revolving fund for "the Purchase of Tax Certificates and Titles," and especially to section 3 thereof, which provides: "When there has been no redemption of the lands so sold at tax sale to an irrigation district or any other person or of the lands struck off to the county for which certificate of sale has been assigned to an irrigation district, or any other person in the manner and within the time hereinafter allowed by this Act for the redemption of lands from such tax sales, the county treasurer of the county within which such lands are situated, shall issue tax deed therefor to such irrigation district, or other holder of certificate of sale."

No doubt the irrigation district could redeem the land from tax sale, or purchase the rights of the county therein, without impairing the rights of those interested in the district; indeed, it would be beneficial to the district and all interested therein if the irrigation district were to do that; but the operation of the section cannot be extended to impair the rights of the bondholders.

It is argued that the bondholders have the right to redeem the lands prior to the issuance of a deed by the county. Whether this be true or not, it does not furnish an adequate answer to the questions presented. If out of their pockets they provide the money to save the lands which are pledged to pay debts owing to them, they will reach but one end—the annulment of the tax sale. Redemption will not give them

any title. (Cooley on Taxation, 4th ed., 3105; *Sunderman Investment Co.* v. *Craighead*, 143 Minn. 286, 173 N. W. 653.)

But in view of the law it is the duty of the county commis- ██ sioners to apply for tax deeds to enable the county to sell the land and to apply the proceeds as directed by law. (*State ex rel. Malott* v. *Board of County Commrs.*, 86 Mont. 595, 285 Pac. 932.) This is but one of the puzzles which may be expected to appear from time to time in the operation of Montana's maladroit irrigation law. However, the rationale of the law compels the conclusion that, when irrigation district lands are struck off to the county and under statutory direction debenture certificates have been issued therefor, the county becomes a trustee and never discharges its trust until the lands are redeemed from sale, or, if not, until it sells the lands and distributes the proceeds agreeably to equity. (*Cosman Case*, supra; *Malott Case*, 89 Mont. 37, 296 Pac. 1.)

The county treasurer acted without authority when he pretended to assign the county's rights to the McDaniel land to the defendant Thelen.

It is the duty of the county to return the money received from him to defendant Thelen. It is also the duty of the county to apply for a tax deed and to sell the land as speedily as possible. "If the lands shall sell for an amount in excess of the taxes and assessments, then, after the payment of the general taxes, applying the well-established rules of equity, the remainder of the money should be turned over to the irrigation district, provided that sum does not exceed the total amount which would have been assessed against these lands on account of the bonds, had such lands not been transferred by tax deed. Thus the bondholders will have received the full value of all of their security." (*Malott Case*, 89 Mont. 37, 296 Pac. 1, 19.)

Defendants contend that this proceeding must fail because ██ plaintiffs, before applying for the writ of mandate, did not demand that defendants perform the acts sought to be compelled by the writ. The general rule which requires a demand before proceeding in court to compel a public officer

to perform an act is that it is presumed he will do his duty when a necessity therefor is called to his attention. One should not invoke the process of a court to compel the performance of a duty when the performance can be secured by demand. But where it appears that a demand, if made, would not have been granted, it is unnecessary. (*McGillivray Construction Co.* v. *Hoskins*, 54 Cal. App. 636, 202 Pac. 677; 38 C. J. 578.) The circumstances considered, it appears to us clearly that the demand, if made, would not have been complied with.

So far as the county treasurer is concerned, the rule is that "*mandamus* will lie to compel the undoing of a thing wrongfully and improperly done, when such wrongfully and improperly done thing precludes or prevents rights to which one is under the law entitled. (*State ex rel.* v. *Homer*, 249 Mo. 58, loc. cit. 65, 155 S. W. 405, 406; *State ex rel.* v. *Philips*, 97 Mo. 331, 10 S. W. 855, 3 L. R. A. 476; 10 C. J. 592)." (*State ex rel. Roberts* v. *Wilson*, 221 Mo. App. 9, 297 S. W. 419, 421.)

The judgment is reversed and the cause remanded to the district court of Cascade county, with instructions to proceed in conformity with the views expressed in this opinion.

ASSOCIATE JUSTICES MATTHEWS and ANDERSON concur.

MR. JUSTICE STEWART: I dissent. The judgment should be affirmed. There is only one real question involved in this case, and that is a very simple and direct one. It involves the applicability of section 2207, Revised Codes 1921, to the issues of this case. The discussion of the Irrigation District Act and the previous decisions of this court relative thereto have no real application to the issues involved here. They carry us far afield and do not serve any purpose in the instant litigation. The majority opinion disposes of section 2207 on the ground that it has nothing to do with assessments, but overlooks the fact that section 2208, a part of the same Act (Chap. 151, Laws of 1917), provides that the Act shall apply to any sales

of land for which a treasurer's deed shall not, at the time of the passage of the Act, have been actually issued. Thus it indicates that the Act is a general one and was intended to apply to all cases where sales are made by the treasurer for tax purposes.

In view of the discussion in the majority opinion, it is interesting to note that the bonds of the irrigation district were issued in 1920, under the irrigation laws of Montana, and were subject to all other existing applicable laws of the state in force at the time. Sections 2207 and 2208, Revised Codes of 1921, were enacted in 1917, and therefore were in effect at the time of the issuance of the bonds. The terms and provisions of these sections were just as much a part of the contract as were any other sections of the Code.

It is important to consider the reasons for the enactment of sections 2207 and 2208. Previous to 1917 there were only two possibilities available to a county whereby it could actually get possession of money due for delinquent real estate taxes after sale of the property to the county; (a) Redemption of the property and (b) taking tax deed and thereafter making a sale. The first plan depended entirely upon the will of the land owner. He might or might not redeem. It was his option, and the county had no choice in the matter. The second plan involved, not only a waiting period of at least three years, the period of redemption but also the details of advertising, posting, and execution of a tax deed. Under the latter alternative the county was forced to stand by without its money due for delinquent taxes and usually without revenue from currently accruing taxes.

It is a well known and generally recognized fact that a county does not desire to acquire title to and hold property generally, but only resorts to seizure of the property, the subject of taxation, somewhat in the manner of a levy, for the purpose of collecting the part of the revenue due to the public as a share of the general or special tax burden imposed by law upon the property involved. Under our system it is not now, and never has been, the policy of government for the state or

a county to acquire and ·hold property not utilized for governmental purposes. Since state and county property is not subject to taxation, it is not income bearing. The purpose of taxation is not to acquire property, but to get revenue.

In order to facilitate the collection of taxes, the legislative authority of the state enacted section 2207, and added section 2208 to make the Act applicable immediately and generally. By the terms of these sections the county may get its money from anyone willing to advance the amount. These sections in effect extend in force the policy of tax sales, viz., that the county will not bid at such a sale if there is any other bidder, and only then upon a second offering. This plan actually leaves the sale open until the land is redeemed, or a deed is issued. In case a third party makes the payment of the tax, he becomes in reality the purchaser of the land, subject to redemption, in manner and form as though he had purchased it at the open bidding at the treasurer's sale. The county takes its money and steps out of the picture. In order to effectuate this purpose, a statutory form of assignment is provided for execution by the county treasurer.

The course provided by statute, as above outlined, is the subject of the difficulty here. The majority opinion holds that section 2207 is not applicable here because it mentions taxes only and does not say anything about assessments. Reliance is placed upon a statement in the opinion of this court in the *Malott Case,* supra. In that case it was said "that irrigation district assessments are not taxes, as that term is used in section 2215." Section 2215, Revised Codes 1921, defines the title that passes under a tax deed. Sections ·2207 and 2208, supra, are designed to control, facilitate and promote the speedy collection of tax money. They were not enacted after the issuance of the bonds under consideration here, and therefore cannot under any stretch of the imagination be held to affect or impair contracts already in existence. But, if section 2207 had been enacted after the issuance of the bonds, it would have made no difference, because there is no vested

410

right in a method of collecting taxes. (*State ex rel. Souders* v. *District Court*, 92 Mont. 272, 12 Pac. (2d) 852.)

In considering another administrative section of the tax laws (Chap. 96, Laws of 1923), this court discussed considerations such as are here involved. The chapter last mentioned provides for semi-annual tax payments in lieu of annual tax payments theretofore required. The city of Missoula, a municipal corporation, took the position that, because the Act referred only to "taxes," improvement district assessments were still payable annually. A taxpayer tendered half of his taxes and half of his improvement district assessments immediately before November 30. The city treasurer refused to accept the partial payment so tendered under the provisions of the Act, and demanded the full amount of the taxes and assessments chargeable for the year, threatening to proceed against the taxpayer as a delinquent. Suit was instituted to prevent the city treasurer "from proceeding to carry his threat into execution." The issue in the case, *Thomas* v. *City of Missoula*, 70 Mont. 478, 226 Pac. 213, 214, directly involved the question: Are improvement district assessments included in the Act under the designation "taxes"? This court disposed of the main contention in the following language: "It is contended further that assessments made for special improvements are not taxes and are not comprehended by the provisions of Chapter 96 above. That money exacted from a property owner to defray the expense of a special improvement is a species of taxation imposed and collected under the taxing power cannot be questioned. (*Billings Sugar Co.* v. *Fish*, 40 Mont. 256, 20 Ann. Cas. 264, 26 L. R. A. (n. s) 973, 106 Pac. 565.) In defining the word 'tax' the Century Dictionary says: 'In a more general sense the word includes assessments on specific properties benefited by a local improvement for the purpose of paying expenses of that improvement.' For certain purposes the authorities quite uniformly recognize a distinction between ordinary taxes and exactions for special improvements, as, for instance, when the question of exemption or uniformity is raised. But whether the term 'tax'

when used in a statute, as in Chapter 96, includes an imposition for special improvements, must be determined by reference to the intention of the legislature, as that intention may be disclosed by the context, the purpose sought to be accomplished, the general scope of the Act and related Acts. (*Wisconsin Real Estate Co.* v. *Milwaukee,* 151 Wis. 198, 138 N, W. 642.) Neither the context nor general scope of the Act (Chap. 96) furnishes a key to the solution of our question; but it is worthy of note that prior to the enactment of Chapter 96 all taxes were collected annually in one payment (secs. 2169 and 5203, Rev. Codes), and the rule applied specifically to special improvement taxes (sec. 5251). The manifest purpose of Chapter 96 was to relieve the taxpayer of the burden thus imposed so far as relief might be had by a division of the amount and payment in equal semi-annual installments. It is also to be observed that throughout the special improvement statute (secs. 5225–5277, Rev. Codes) these exactions for special improvements are referred to as taxes (secs. 5240, 5244, 5245, 5247, 5248, 5251, 5253, 5266, 5267 and 5276). In view of this fact and the apparent purpose of the Act, we think the only fair inference is that the legislature intended to include under the term 'taxes' special improvement taxes as well as general and *ad valorem* taxes.''

The sections here involved are administrative provisions and should be subject to the construction placed by this court on Chapter 96, supra. The assignment of the certificate was proper and legal.

Vigorous protest is asserted by appellants to the assignment of the certificate, on the ground that it is violative of section 7243, Revised Codes 1921, and other sections of the Irrigation District Act. These sections provide for the preservation of the rights of the irrigation district and its creditors in case of a sale of lands within the district when sold to the county for taxes. The provisions for issuance of debenture certificates and the assignment thereof were designed to operate only so long as the county remains the holder of the certificate before deed, and during the time the county holds the title

after deed. These sections insure to the district and its creditors their fair proportionate share of the proceeds of a redemption, or of a sale after deed to the county. In case of an assignment, as here, the district and its creditors—bondholders in this instance—are upon surrender of such debenture entitled to their proper share of the money paid to the county treasurer. It cannot be said that holders of irrigation district bonds are treated differently under the procedure followed in this instance than are mortgagees generally and holders of bonds issued under trust deed contracts. In either instance a redemption must be made to save the property.

A very pertinent discussion on this subject is contained in the opinion in the case of *State ex rel. Malott* v. *Board of Commrs.*, 89 Mont. 37, at page 93, 296 Pac. 1, 18, wherein the court discussed the rights of the state in the matter of loans of school funds, as follows: "But, if a loan is made of the school funds upon farm lands, the lands are still subject to taxation, *and the state of Montana is obliged to protect its loan by the payment of the taxes levied against the land, or suffer the loss of its security through the taking of a tax deed.* The bondholders are in the same situation, and may protect their security by either paying the taxes or redeeming the land at any time prior to the expiration of the period for redemption." It is interesting to note that the bondholders mentioned in the quotation are the identical ones involved here. The remedy of the bondholders in this case lies in the fact that they may redeem to save their security.

It is admitted that, if Thelen, respondent, had purchased the lands at the treasurer's tax sale, he would have been entitled to a deed free and clear of all encumbrances, after the expiration of the period of redemption. (*Malott Case*, supra, 89 Mont. 94, 296 Pac. 1, 18.) To say that, simply because he took the tax certificate by assignment from the county, his rights are different from what they would have been if he had purchased it, is to indulge in unwarranted technicalities. We have attempted to point out that it makes no difference whether he takes the certificate by reason of a bid at the sale,

or by virtue of a payment of the taxes after the sale. There can be no justification of such a legal distinction. The whole thing turns on the question of the applicability of the assignment provisions. (Secs. 2207 and 2208.) The purpose of these sections being to enable the county to get its money without waiting for the expiration of the redemption period, and the statutes being administrative in character, the plain and common-sense construction is obvious.

It is important to note that the service rendered to an irrigation district by the county—in other words, by the public—in the matter of the collection of its assessments is performed gratuitously, and that it is only reasonable to believe that it shall be performed in the same manner as such similar service may be performed for the county on it own behalf.

Section 7213, Revised Codes 1921, places the lien of such taxes and assessments on the same plane with taxes levied for state and county purposes, and section 7242 provides that "delinquent sales of land for unpaid taxes or assessments shall be made in the same manner as for state and county taxes, * * * and the right of redemption shall in all cases be made the same as in cases where lands are sold for state or county taxes." Under the terms of section 7240, a part of the Irrigation Act itself, it is provided that the county treasurer of each county shall collect "such taxes or assessments at the same time and in the same manner as county and state taxes." Therefore, if we are correct in our assumption that the assignment of a tax certificate under the provisions of sections 2207 and 2208, supra, constitutes but another step in the collection of the taxes generally, then the certificate under consideration was properly assigned.

It must not be forgotten that this court has declared that an irrigation district created under the laws of the state of Montana is a public corporation organized for the government of a portion of the state, and that it exercises some governmental functions. For example, it may levy taxes, which is the exercise of one of the highest prerogatives of sovereignty.

(Chap. 35, Part 4 (sec. 7232 et seq.), Rev. Codes 1921; *Crow Creek Irr. Dist.* v. *Crittenden,* 71 Mont. 66, 227 Pac. 63.)

Section 7235, Revised Codes 1921, provides for the levy of an amount sufficient for the general administrative expenses of the district, including costs of maintenance, repairs and interest on, and for payment of the principal of, the outstanding bonded or other indebtedness of the district. This section contains the following language: "But the tax thus determined," and so forth, thereby denominating the assessments as taxes. The section was amended by Chapter 157, Laws of 1923, and again by Chapter 89, Laws of 1931. It is important to note that the last-mentioned amendment places the obligation of levying the "taxes or assessments" upon the county commissioners of the county in case the levy is not made and certified by the commissioners of the irrigation district. So it must be observed that an irrigation district is just as much a subdivision of the state for certain governmental purposes as are cities, towns and school districts.

If the operation of section 2207 is restricted to cases involving only general taxes, the section will be rendered inoperative by reason of the fact that there is scarcely an assessment on the books of any county that does not contain some item of so-called special assessment. The county treasurer collects all the taxes and assessments. In most instances he collects city, town and school district taxes and all assessments required for the maintenance of special improvement districts and other charges. In fact, the county treasurer collects the taxes and assessments for all the various subdivisions of the state. Some one or more of these special taxes and assessments find a place on nearly every assessment list in the state; so that, if section 2207 is not applicable to a case where special assessments are involved, the section can hardly be invoked for any practical purpose. It was not the intention of the legislature that the section should be given such restricted meaning.

The most serious objection to be urged against the restriction of section 2207, as applied to the majority opinion, is

found in the fact that the very purpose and intent of the section will be defeated. As here construed and applied, the section will not yield any immediate revenue. It will not aid the county in the collection of taxes. In fact, it will merely remain in the Code without serving any useful purpose.

The decision in this case extends to the bondholders of an irrigation district rights and privileges not enjoyed by other property owners. It is absurd to say that a county treasurer may assign a tax certificate in a case where there are included city taxes and special improvement district taxes, but that he is forbidden to assign a certificate wherein there are involved irrigation district taxes and assessments. This is an unwarranted, unreasonable and unfair distinction. The recognition of the distinction not only operates unfairly and unjustly upon taxpayers, but hampers and restricts the county in the collection of taxes for its own use and for the use and benefit of all subdivisions within the state which may be interested in the total tax levied against a given piece of property.

MR. JUSTICE ANGSTMAN: I concur in the views of MR. JUSTICE STEWART.