[No. 13523. In Bank. — August 1, 1890.]

O. G. WEYSE ET AL., APPELLANTS, v. J. A. CRAW-FORD, RESPONDENT.

TAXATION — ASSESSMENT OF PROPERTY — PROCEEDINGS IN INVITUM. — All proceedings in the nature of assessing property for purposes of taxation, and in levying and collecting taxes thereon, are *in invitum,* and must be *stricti juris.*

ID. — POWER OF ASSESSOR — ARBITRARY ASSESSMENT — SWORN STATEMENT — REMEDY FOR FALSE STATEMENT. — An assessor cannot make an arbitrary assessment, unless the property owner neglects or refuses to make any statement under oath; and if such statement is returned, no matter how false the assessor may believe it to be, he has no power thereafter to make an arbitrary assessment on the ground of neglect or refusal to return property supposed to be assessable, the proper remedy being either to subpœna or cite the party for examination, or to prosecute him for perjury.

ID. — ARBITRARY ASSESSMENT OF GOODS STORED IN WAREHOUSE — MAR-
GINAL ADDITION TO SWORN STATEMENT. — Where the owners of a ware-
house returned a sworn statement of all their property, including the ware-
house, and informed the assessor that they did not own the goods stored
therein, nor know who held the storage receipts therefor, but at his
request gave him a memorandum of their quantity and character, and
of the persons to whom storage receipts had been issued, an arbitrary
assessment of such goods to the owners of the warehouse by a marginal
addition to the sworn statement, on the alleged ground of neglect to
return a statement, is without authority of law, and void.

ID. — CONSTRUCTION OF CODE — PROPERTY IN "POSSESSION" OF TAX-
PAYER — ASSESSMENT TO BAILEES. — To make a party liable to assess-
ment for property as being in his possession, control, or management,
within the meaning of section 3629 of the Political Code, his "posses-
sion" must be one that carries with it the usual marks and indications of
ownership; and property in the possession of mere naked bailees, who
are without interest in or power over the property, is not assessable to
such bailees.

ID. — GOODS IN WAREHOUSE NOT ASSESSABLE TO WAREHOUSEMEN. — Prop-
erty on storage in a warehouse, for which the owners of the warehouse
had given storage receipts, each receipt showing that the holder of the
receipt was the owner of the property described in it, and there on store,
is not in the possession, control, or management of the owners of the
warehouse, within the meaning of section 3629 of the Political Code.

ID. — INVALIDITY OF LIEN — INJUNCTION. — A tax levied and imposed upon
such an assessment is not a lien upon any property of the owners of the
warehouse, nor are they liable therefor; and an injunction will be issued
to restrain the tax collector from selling the warehouse for a delinquent
tax upon the goods stored therein.

ID. — DUTY OF ASSESSOR. — It is the duty of the assessor to assess property
to the owner, if he can ascertain who the owner is; otherwise, to assess
it to unknown owners, and proceed at once to collect the tax by seizure
and sale, in the manner provided by law.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Dooner & Burdett,* for Appellants.

*C. C. Stephens, S. M. Payton,* and *F. P. Kelly,* for Re-
spondent.

Fox, J. — This action is prosecuted to secure an
injunction restraining defendant, tax collector of the
county of Los Angeles, from selling certain real prop-

erty, known as Naud's warehouse, for delinquent taxes for the year 1887-88.   Judgment for defendant, motion for new trial denied, and plaintiffs appeal.

Plaintiffs were the owners and in possession of divers pieces of real property, and, among others, of that known as Naud's warehouse, holding the same as tenants in common, the plaintiff O. G. Weyse being the manager, and having the control thereof.   In or about the month of April, 1887, O. G. Weyse, in response to the demand of the assessor, made out and delivered to said assessor a statement under oath, in the form prescribed by law and required by that officer, giving a description of what he claimed and swore to be all the property owned by or in the possession or under the control of himself or his co-tenants on the first Monday of March in that year.   This statement included the lot and warehouse in question, with divers other pieces of real estate, and a list of personal property, but did not include any goods, wares, and merchandise on store in the warehouse.   Subsequent conferences were had between the assessor or his deputy on the one side, and the plaintiff and his foreman at the warehouse on the other, in reference to the personal property in the warehouse.   At these conferences, the officer was shown through the warehouse, and given every opportunity he required to inspect the property, and was told that none of it was the property of plaintiffs; that it was simply property left on storage by different parties, and for which warehouse receipts had been issued in the regular course of business; that the plaintiffs had no interest in it or control over it, and did not then know who it belonged to or who held the receipts therefor; but at his request the officer was furnished with a written memorandum of the quantity and character of the property, so far as known to the plaintiffs or their foreman in charge, and of the persons to whom warehouse receipts were originally issued therefor.   This memorandum,

however, was not sworn to. Under these circumstances, the assessor arbitrarily added to the sworn statement made by plaintiffs, and made an arbitrary assessment against them of an item as follows:—

"Miscellaneous merchandise and grain in Naud's warehouse, fifty thousand dollars." And opposite the item made the following note on the margin of the assessment: "Neglected to return statement as required by section 3633."

Plaintiffs' total assessment for the year, including the item above mentioned, amounted to ninety-one thousand five hundred dollars. A general reduction of ten per cent was made upon the entire assessment roll of the county, which left the final assessment of plaintiffs $82,850, of which the item above quoted amounted to $45,500.

In due time, plaintiffs tendered the entire taxes imposed for the year upon all the property given in by them, and all that was assessed against them, except the single item above quoted, with all costs and percentage thereon. The tender was refused, and in due course the tax collector advertised to sell the real property for the tax as delinquent, including the tax levied upon this item of forty-five thousand five hundred dollars. It was to restrain this sale that the present action was brought.

This arbitrary assessment and the accompanying marginal note was made without authority of law, and is void. The tax levied and imposed upon that assessment never became a lien upon the real or any property or plaintiffs, and plaintiffs never became liable therefor.

The error into which the assessor has fallen in this case may be a common one, but it is none the less an error. All proceedings in the nature of assessing property for purposes of taxation, and in levying and collecting taxes thereon, are *in invitum,* and must be *stricti juris.*

It is the duty of the assessor to demand from each person liable to assessment in his county a statement to be made under oath, as provided in sections 3629 and 3630 of the Political Code. If he makes that statement, then, no matter how false the assessor may believe it to be, he has no power thereafter to make an arbitrary assessment on the ground of neglect or refusal to return a statement. But if the assessor believes the statement to be false, he has a right, under section 3632, to subpœna the party making the statement, and also any other person whom he may suppose to have knowledge upon the subject, and examine him or them on oath, as witnesses are examined, touching any property which is assessable in his county; or in the absence of a statement, or an insufficient description of real property, he may cite the party to appear in the superior court for such examination, under section 3634, where a summary hearing is guaranteed to him, and all proceedings will be had at the expense of the tax-payer necessary to secure the requisite information for making a proper assessment.

If the property owner neglects or refuses to make and return any statement under oath, or if upon being subpœnaed he refuses to appear before the assessor for examination, or refuses upon proper citation to appear before the superior court for examination, in either of those three cases the assessor has power to make an arbitrary assessment, noting on the margin the reason why it was made, and the board of equalization has no power to reduce such assessment, but he has such power in no other case. In this case, the sworn statement was returned, so that there was no power to make an arbitrary assessment for failure to make such return. The assessor did not subpœna the party to appear for examination, or cite him to appear in the superior court; hence there was no power to make an arbtirary assessment for failure to comply with such subpœna or cita-

tion, and there is no pretense that it was made for such a cause.

For false return, or false testimony upon examination, there are other and more severe penalties,—the pains and penalties of perjury; but these can only be imposed after due trial and conviction of having sworn or testified falsely. Hence the assessor is not authorized to impose a penalty for false statement or false testimony. The power is not given to him to convict or to punish for perjury. The only thing for which he can punish by arbitrary assessment or otherwise is for refusing to take the oath. He cannot set himself up as the judge to determine that the oath, when taken, is false. Still, his powers for the protection of the revenue are ample; for in case of refusal to make the return under oath, or testify when properly subpœnaed, he may not only make an arbitrary assessment, but may also prosecute the offender under section 3632, and recover the penalty therein provided for each and every refusal. If the statement is returned, or the examination had, and the assessor believes that the party has sworn falsely, his remedy then is to complain of and prosecute the offender for perjury; but then he becomes the prosecutor, not the judge.

To our minds, the assessor has also fallen into another error in this case,—an error founded upon a misconstruction of the word "possession," as used in the first subdivision of section 3629 of the Political Code. That section and that subdivision requires that the party shall return a statement, under oath, showing, separately,—"1. All property belonging to, claimed by, or in the possession or under the control or management of such person."

As we understand the case, there is no dispute about the facts in regard to the property intended to be covered by or included in this arbitrary assessment. It did not belong to, was not claimed by, and was not under the control or management of the plaintiffs. They were

mere naked bailees, without interest in or power over the property. It was in their possession only in the sense that it was stored in their warehouse. They had no insurable or other interest in it,—could make no use of it whatever. They had issued their warehouse receipts for it, each receipt showing upon its face that the holder of the receipt was the owner of the property described in it, and there on store. Title to the property itself would pass and repass by transfer of the receipt, and it was impossible that the warehouseman should know, an hour after the receipt was issued, who owned the property. All that he could do for the assessor was to tell him to whom the receipts were issued, and that he did do. It was not done under oath, nor did the assessor require that it should be so done.

The word "possession," as used in this section, is one of several forms of expression there used to convey the same idea, another of which immediately follows it, and is in the words "or under the control or management of such person." To make the party liable to assessment, his "possession" must be one that carries with it the usual marks and indications of ownership. It is true that, ordinarily, possession of personal property is *prima facie* evidence of ownership; but it is only *prima facie* so; and even to this there are exceptions to the rule. The presence of a trunk filled with wearing apparel, in a guest-chamber of a hotel, or of a horse in a boarding-stable, is not even *prima facie* evidence of ownership of the trunk or the horse in the keeper of the hotel or stable. So of a carriage in a repair-shop; and so of grain or goods in a warehouse kept only for the storage of goods for hire, as was the case here.

Possession by a factor, who does not purchase on his own account, is not evidence of ownership. (*Leet* v. *Wadsworth*, 5 Cal. 404; *Hutchinson* v. *Bours*, 6 Cal. 383.) Much less would it be such evidence in the case of a mere warehouseman, whose sole business was to furnish

store-room for hire, and where the sole evidence of possession was that the property was stored in his warehouse. He was then a mere naked bailee. He was not even an agent for the owner,—had no power over the property, either as principal or agent. Under these circumstances, the duty of the assessor was plain,—to assess the property to the owner, if he could ascertain who the owner was; otherwise, to assess it to unknown owners, and in that case to proceed at once to collect the tax by seizure and sale in the manner provided by law. We are satisfied that he could not assess it to the warehouseman, or make the tax thereon a lien upon the real property of any person other than the true owner.

Judgment and order reversed, and the case remanded for further proceedings in accordance with this opinion.

PATERSON, J., McFARLAND, J., and SHARPSTEIN, J., concurred.

THORNTON, J.—I concur in the judgment.