BUTTE ELECTRIC RAILWAY CO., RESPONDENT, *v.* MC-INTYRE, COUNTY TREASURER, APPELLANT.

(No. 5,498.)

(Submitted May 27, 1924.   Decided June 17, 1924.)

[227 Pac. 61.]

*Taxation—Recovery of Taxes Paid Under Protest—Complaint —Insufficiency—Pleading—Cause of Action—Essentials.*

Taxation—Recovery of Taxes Paid Under Protest—Complaint—Insuffi-ciency.
  1.  Complaint in an action against a county treasurer to recover taxes paid under protest, which charged (after elimination of allegations charging arbitrary classification of plaintiff's property by the assessor and refusal of the county and state boards of equalization to re-classify it, duties not imposed upon either, the duty of classifying property for taxation purposes resting upon the county clerk) that plaintiff paid a certain amount under protest, without setting forth demand by the treasurer for any amount or that the county clerk computed the tax upon an erroneous basis, was insufficient to state a cause of action.

Pleading—Cause of Action—Essentials.
  2.  A cause of action is the right which a party has to institute a judicial proceeding, and to state a cause of action plaintiff must disclose his right and an infringement of that right by defendant; he must state the facts which disclose a cause of action in his favor and against the defendant.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

ACTION by the Butte Electric Railway Company against H. A. McIntyre, County Treasurer of Silver Bow County. From a judgment for plaintiff on demurrer, defendant appeals.

Reversed and remanded, with directions to sustain the demurrer.

Cause submitted on briefs of Counsel.

*Mr. George M. Bourquin, Mr. Ed. Fitzpatrick* and *Mr. H. A. Tyvand,* for Appellant.

*Mr. Sydney Sanner* and *Mr. Fred J. Furman,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was instituted to recover taxes paid under protest. A general demurrer to the complaint was overruled, and the defendant, declining to plead further, suffered judgment to be entered against him, and appealed therefrom.

In paragraphs 4, 5, 6 and 7 of the complaint it is alleged that [1] the county assessor of Silver Bow county arbitrarily classified plaintiff's property under class 7, giving it a taxable value of $90,020, whereas it should have been assigned to class 2, with a taxable value of $45,010; that plaintiff applied to the county board of equalization for a reclassification, which was denied; that an appeal was taken to the state board of equalization, but the state board refused plaintiff any relief. The allegations of these four paragraphs may be disregarded at once, since neither the assessor, the county board of equalization nor the state board of equalization has anything whatever to do with the classification of property for the purpose of taxation.

It is the duty of the assessor to make an assessment of all taxable property in his county not subject to assessment by the state board of equalization. (Sec. 2002, Rev. Codes.) An assessment means the process by which persons subject to taxation are listed, their property described and its full cash value ascertained and stated. (*Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477.) The duty of the county board of equalization is to

examine the assessment-book and equalize the assessment of property in the county. (Sec. 2113.) Aside from its administrative function and its duty to assess intercounties property the state board of equalization is charged with the duty to adjust and equalize the valuation of property subject to taxation, to change, increase or decrease valuations placed on property by the assessor or fixed by the county board of equalization, and to supervise the administration of the tax laws, "to the end that all assessments of property be made relatively just and equal at true value in substantial compliance with law." (Laws 1923, Chap. 3, sec. 8, subd. 6.)

The levy for state purposes is made by the legislative assembly (sec. 2147, Rev. Codes), and the rate is fixed by the state board of equalization (sec. 2149). The levy for county purposes is made and the rate fixed by the county board of equalization. (Sec. 2150.) As soon as the county clerk receives from the state board of equalization a statement showing the changes made by that board, he must make corresponding changes in the assessment-book. (Sec. 2159.) Section 2160 provides: "The county clerk must then compute, and enter in a separate money column in the assessment-book, the respective sums in dollars and cents, rejecting the fractions of a cent, to be paid as a tax on the property therein enumerated, and foot up the column showing the total amount of such taxes, and the columns of total value of property in the county, as corrected under the direction of the state board of equalization."

On or before the first Monday of October the clerk must deliver to the county treasurer a duplicate of the corrected assessment-book with the taxes extended (sec. 2161), and within ten days thereafter the treasurer must give the notice required by section 2169, which notice constitutes a demand upon the taxpayer to pay the amount indicated in the notice.

Thus the process is made reasonably clear: The assessor makes the assessment; the county board equalizes the assessment; and the state board reviews the action of the assessor and county board, making such changes in the assessment as will secure a relatively just and equal valuation upon all prop-

erty subject to taxation. When the process of equalization is completed and the changes made are spread upon the assessment-book, the classification statute first becomes operative. The county clerk must compute the amount of the tax upon the percentage of assessed value indicated by section 2000, and when this is done and the tax is extended, the assessment-book is turned over to the treasurer, whose duty it is to demand and collect the tax. It will thus be seen that the classification statute has nothing whatever to do with the assessment of property or the determination of assessed value. It deals only with the imposition of the tax by furnishing the legal basis for computation, and its provisions are directed to the clerk whose duty it is to make the computation. (*State ex rel. Galles* v. *Board of County Commrs.*, 56 Mont. 387, 185 Pac. 456.)

Since neither the assessor, the county board nor the state board has anything to do with the classification of property for taxation, and a classification by any one or all of them is without legal effect, it becomes apparent at once that all of the allegations contained in paragraphs 4, 5, 6 and 7 of plaintiff's complaint are wholly immaterial, and should be stricken or disregarded. Likewise every allegation of paragraph 9, after the first clause, is but the statement of a bald legal conclusion; and the allegations of paragraph 10 are surplusage, and do not aid in the statement of a cause of action. (*Belknap Realty Co.* v. *Simineo,* 67 Mont. 359, 215 Pac. 659.) Eliminating these allegations, the question arises: Does the complaint state a cause of action? It sets forth that the defendant is the county treasurer of Silver Bow county; that plaintiff is a foreign corporation authorized to do and doing business in that county, with property therein subject to taxation on the first Monday in March, 1923; that plaintiff prepared and submitted to the assessor a statement of its property, giving the true value thereof—$225,050; that thereafter, about November 30, 1923, plaintiff paid to the treasurer $26,552.50, of which sum $2,182.99 was paid under protest.

A cause of action is the right which a party has to institute [2] a judicial proceeding, and to state a cause of action the

plaintiff must disclose its right and an infringement of that right by the defendant. (*Johnson* v. *County of Lincoln,* 50 Mont. 253, 146 Pac. 471.) It is not sufficient for it to say, "Some one invaded my right and did me an injury"; it must state the facts which disclose a cause of action in its favor and against the defendant. What wrong, then, was done the plaintiff, and by whom? It is not alleged that the county treasurer ever demanded that plaintiff pay $26,552.50 or any other sum, or that the county clerk computed plaintiff's taxes upon an erroneous basis. In other words, there is not anything to disclose that the tax collected, or any part of it, was unlawful.

In their brief counsel for plaintiff say: "The county clerk should and did extend and foot the rolls and in this case the classification ultimately appearing was that made by the assessor in the first instance. * * * The clerk thereby adopted the classification of the assessor and made it his own." But there is not a suggestion in the complaint that the clerk did anything of the kind, or in fact did anything at all. The complaint fails to state a cause of action, and the court erred in overruling the demurrer.

The judgment is reversed and the cause is remanded, with directions to sustain the demurrer.

*Reversed.*


MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.