ROSEBUD LAND & IMPROVEMENT CO., Respondent, *v.*
CARTERVILLE IRRIGATION DISTRICT et al., Appellants.

(No. 7,542.)

(Submitted June 4, 1936.   Decided June 15, 1936.)

[58 Pac. (2d) 765.]

466

*Messrs. Wood & Cooke,* for Appellants, submitted a brief; *Mr. Sterling M. Wood* argued the cause orally.

*Mr. Geo. E. Snell,* for Respondent, submitted a brief and argued the cause orally.

*Mr. Charles P. Cotter* and *Mr. Frank T. Hooks, Amici Curiae,* submitted a brief on their motion to dismiss the appeal; *Mr. Hooks* argued the point orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment perpetually enjoining the assessment or charging a certain tract of land, then owned by the Rosebud Land & Improvement Company, with any taxes or assessments for bond interest of the Carterville Irrigation District.

The complaint, filed in applying for the injunction, shows the following facts: The district was established in 1909, and the following year it issued bonds for $335,000 for the purchase of water rights and construction of an irrigation system; $320,000 of these bonds are still outstanding. The tract of land in suit was included in the district and duly assessed for the year 1927, but the taxes were not paid, and, on tax sale, was struck off to the county of Rosebud. In 1931 the county secured a tax deed, and, in 1932, sold the tract to plaintiff.

In 1935 the district levied an assessment sufficient to pay the interest on the outstanding bonds for that year, and charged against plaintiff's tract such proportion of the total amount to be raised as the irrigable area within the tract bore to the total irrigable area within the district. The commissioners of the district were about to certify the amounts charged against

each tract in the district, when the plaintiff commenced its injunction suit.

The defendants interposed a general demurrer which was by the court overruled, and the defendants were given twenty days within which to further plead. They refused to plead further, and the judgment was entered on September 12, 1935. Notice of appeal was filed on January 22, 1936, and within time the defendants filed their transcript on appeal and brief on February 26, 1936. Plaintiff's brief was filed on April 8. On April 21, 1936, Charles P. Cotter, Esq., and Frank T. Hooks, Esq., obtained leave of court to appear herein as *amici curiae,* and filed a motion to dismiss the appeal on the ground that the question presented has become moot by the dissolution of the corporation plaintiff on January 4, 1936.

In resisting this motion, the defendants presented the affidavit of F. V. H. Collins, Esq., a commissioner of the district, reciting the dissolution and liquidation of the affairs of the corporation plaintiff, and therein the deeding of the land in suit to "the F. V. H. Collins Co.," a corporation, on December 9, 1935.

The questions presented by the appeal have not become moot in the sense that the controversy as to whether or not the land in suit may be charged with a portion of the amount necessary to pay the interest on the bonds has been determined. While that question was pending, the land was transferred and the corporation plaintiff was then still in existence.

The question whether or not the defendants may prosecute their appeal is determined in their favor by the provisions of section 9086 of the Revised Codes of 1921, as construed by this court (*Price* v. *Skylstead, Receiver,* 69 Mont. 453, 222 Pac. 1059, 1061), as follows: "Section 9086 provides: 'In case of any transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding.' The second alternative was chosen in the foreclosure suit, but that action might have

continued to judgment in the name of the Spokane bank as plaintiff, notwithstanding it had transferred its interest to the Havre bank pending litigation. (*Anglo-Californian Bank* v. *Field,* 146 Cal. 644, 80 Pac. 1080.)"

Had the transfer been made pending the litigation, the action could have proceeded in the name of the plaintiff, and, consequently, the transfer pending appeal cannot deprive the defendants of the right to have the judgment in favor of the plaintiff, fixing the status of the land in the defendant· district, reviewed by this court. The motion to dismiss is overruled.

On the merits, the brief of counsel for the plaintiff consists ▮▮▮ only of the statement that the questions presented were determined in the *Malott Case* (*State ex rel. Malott* v. *Commissioners of Cascade County,* 89 Mont. 37, 296 Pac. 1), and that the suit was brought to determine whether or not the rule there declared "is to remain the law of this state in the state courts."

Counsel for the defendants concede that, if we are to adhere to the decision in the *Malott Case,* the judgment must be affirmed, but assert that that decision is in conflict with the provisions of our Irrigation Law, and "at variance with the rule of constitutional law announced in the controlling case of *Roberts* v. *Richland Irr. Dist.,* 289 U. S. 71, 53 Sup. Ct. 519, 520, 77 L. Ed. 1038," and that the Circuit Court of Appeals for the Ninth District declined to accept the rule of the *Malott Case.* (*Judith Basin Irr. Dist.* v. *Malott,* 73 Fed. (2d) 142, 97 A. L. R. 504.) Both of these decisions post-date our decision above; we have therefore given careful consideration to the pronouncements there made, and reconsideration to all of our decisions on the subject.

The vexatious question here presented has been before this court on several occasions when this court has sought to determine the intent of the legislature in this regard, and in the light of that intent, to construe the provisions of the Irrigation District Law (Laws 1909, Chap. 146, as amended), and of the statutes on taxation generally, in such a manner as to protect

those land owners who sought to improve their lands by invoking a law under which they were, seemingly, assured that they would be required to pay only to the extent that those lands were benefited by the improvement, and, at the same time, do justice to the bondholders who in good faith provided the money with which to make the improvement, under the apparent assurance of the Act that the bonds issued would constitute a lien upon all of the lands in the district. (See *Clark* v. *Demers,* 78 Mont. 287, 254 Pac. 162; *Cosman* v. *Chestnut Valley Irr. Dist.,* 74 Mont. 111, 238 Pac. 879, 881, 40 A. L. R. 1344; *State ex rel. Malott* v. *Board of County Commrs.,* 86 Mont. 595, 285 Pac. 932; *Scilley* v. *Red Lodge-Rosebud Irr. Dist.,* 83 Mont. 282, 272 Pac. 543; *State ex rel. Malott* v. *Cascade County,* 94 Mont. 394, 22 Pac. (2d) 811; *State ex rel. Malott* v. *Commissioners of Cascade County,* supra.)

The decision of the Supreme Court of the United States in the *Roberts Case,* sustaining the supreme court of Washington (169 Wash. 156, 13 Pac. (2d) 437) in its interpretation of the Irrigation District Law of that state, is contrary to the holding in the *Malott Case* on which the judgment before us is based, and in harmony with the rule laid down in the *Cosman Case,* but emphasizes the disastrous results which would flow from the application of those rules, the consideration of which induced this court to recede from the opinion in the *Cosman Case* and announce the rules laid down in the *Malott Case.*

In the *Roberts Case* it is apparent that the benefit to accrue to the plaintiff's land within the irrigation district was of a value of approximately $350; up to 1931 Roberts had paid assessments totaling $1,168.65, when, in that year, the district threatened to make a further assessment against his land of $757.53 "to meet deficiencies resulting from failure of others to pay assessments against their lands." Despite the fact that, on the payment of this last assessment, the land owner would have paid more than five times the value of the benefit accruing to the land, and with no indication as to how much more he would be required to pay before the bonds of the

district were retired, and it appearing that the bond issue was for $538,000, and it not appearing that any portion of the principal had been paid, the supreme court said: ''We are unable to say that because the assessment was distributed in proportion to estimated benefits, an exaction exceeding such benefits would amount to spoliation and represent a plain abuse of power. A general tax distributed in proportion to benefits received is not indicative of arbitrary action.'' Yet the declaration of that court theretofore, and on which we relied in the *Cosman Case,* was: ''The principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and, therefore, the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. \* \* \*

''The exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation. We say 'substantial excess,' because exact equality of taxation is not always attainable; and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment.'' (*Norwood* v. *Baker,* 172 U. S. 269, 19 Sup. Ct. 187, 190, 43 L. Ed. 443.)

Assessments totaling more than five times the value of the special benefit accruing to land certainly constitute a ''substantial excess,'' and carried to its logical conclusion, under the rule announced in the Roberts decision, merely because, initially, the assessment was distributed in proportion to estimated benefits, an owner of a tract within such a district can be called upon to pay many times the full value of the land. Such a rule gives rise to what is termed ''the last honest acre doctrine.''

It is hardly conceivable that, knowing that such a rule applies, any owner of land in an irrigation district would continue to pay his taxes and assessments for any great period of time and, eventually, as was shown to have happened in the Chestnut Valley Irrigation District, all of the lands within the district will revert to the county, and it is hardly to be expected that the county could thereafter find buyers therefor. The result would be that the county, holding the lands in its proprietary capacity, would be liable for the payment of the principal and interest on the bonds, as it was contended the county was in the *Chestnut Valley Irrigation District Case.*

While this court is not concerned with the policy or wisdom of legislation, we do not believe that it was the intent of the legislature either to deprive farmers, who were induced to take this means of bettering their farms, of their holdings, or to saddle the expense of the improvement upon the county at large.

In the federal case cited, the Circuit Court of Appeals for this circuit, construing our own statutes on the subject, refused to follow our decision. In that decision (*Judith Basin Irr. Dist.* v. *Malott,* supra), it is held that, where all of the lands within the district have gone to the county for delinquent taxes and tax deeds have issued to the county, the levies or assessments for the district must be charged against the lands, and for the purpose of sale the county commissioners must determine the market value of the lands on the basis that they will be subject to future irrigation taxes. This result is reached by holding that the district bonds are general obligations of the district, a conclusion arrived at by reference to the law relating to the ordinary municipal bonds and to the decisions of certain sister states with respect to irrigation district laws. We do not believe that the court would hold that a situation could arise under the general law for the issuance of municipal bonds, wherein one business block or residence property could be held for the whole amount of the bonds, principal and interest, and yet, with reference to such bonds,

472

there is no requirement that they be apportioned according to estimated benefit to be derived from the use of the money secured by the sale of the bonds.

The holding is, in effect, that, the true owners of the lands within the district having been deprived of their titles through the operation of "the last honest acre" doctrine, it having become impossible for such owners to pay the ever increasing assessments due to the pyramiding of the amount by reason of delinquencies, the county commissioners shall fix a market value on these lands, which necessitates the finding of buyers willing to undertake an obligation which the original owners of the land found it impossible to discharge and in addition pay to the county a substantial sum as the market price of the land. Again we say that we cannot conceive an intention on the part of the legislature that such should be the interpretation or operation of this law, enacted for the benefit of the land owners.

There is considerable merit in certain of the contentions of counsel for the defendants, based upon provisions of the Irrigation District Law, but after a careful reconsideration of the questions raised in the *Malott Case,* 89 Mont. 37, 296 Pac. 1, 13, and here, we are not inclined to recede from the position taken in that case. The bonds constitute "an encumbrance" against the lands within the district, extinguished by the issuance of a tax deed, which "is not derivative, but creates a new title in the nature of an independent grant from the sovereignty, extinguishing all former titles and liens not expressly exempted from its operation." (Citing *State ex rel. City of Great Falls* v. *Jeffries,* 83 Mont. 111, 270 Pac. 638.)

Judgment affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.