STATE OF MONTANA ex rel. WINIFRED H. BURNS, Re-
Lator and Appellant, *v.* VICTOR D. GROSHELLE and
RUTH M. GROSHELLE, Respondents.

No. 9536.
Submitted January 11, 1957.  Decided February 4, 1957.
306 Pac. (2d) 675.

2

Messrs. Sandall & Moses, Billings, for appellant.
Mr. Joseph F. Meglen, Billings, for respondent.
Mr. James L. Sandall and Mr. Meglen argued orally.

MR. CHIEF JUSTICE HARRISON:

This is a habeas corpus proceeding instituted in the district court of Yellowstone County, Montana. The case involves the question of custody of the child, Ronald Douglas Burns, who was born on July 26, 1949, and at present is approximately seven and one-half years of age. Relator, Winfred H. Burns, is the boy's father. The respondents, Victor D. Groshelle and Ruth M. Groshelle, have kept and cared for the child since April

11, 1952. Following a trial the district court denied the petition and continued the custody of the child in the respondents. Motion for a new trial was made and denied by the court, and from such judgment and order relator has appealed.

The evidence disclosed that the relator had been previously married to one Delta Burns and to this union four children were born; the marriage ended in divorce about 1947 and the custody of the four children was given to the wife, Delta Burns; that relator was to pay $150 per month for the support of the children and while no order of court has ever been entered relieving him of his liability for their support he had not been paying for their support since the year 1951; relator had not seen the children for about three years; they were in the custody of his former wife and he does not know where his wife is. At some time in 1949, or about five years before the trial of the instant case, relator had been charged with nonsupport of his children and was in jail on that charge for about a week until his trial came up, at which time he pleaded guilty to the charge and was given a six months' suspended sentence.

Following his divorce from Delta Burns, relator married Ellen Burns on October 8, 1948. This marriage ended in divorce on August 29, 1951; Ellen in the divorce obtaining custody of the child whose custody is at issue in this case but shortly thereafter she surrendered the child to the relator and on September 21, 1951, the relator obtained an order from the district court awarding him the custody of the child.

During the month of October 1950, the relator brought the child to the respondents and stated to them that his wife had left him and requested the respondents to care for the child. An agreement was made that relator was to pay the sum of $2 per day for the care and support of the child, which sum he did pay. The respondents cared for the child until June 1, 1951, when the relator requested the return of the child and received him. It further appears that the child had been cared for by other people before he was taken in by respondents in October of 1950. After relator had taken his child, on June 1,

4

1951, from the respondents he was living in Missoula and working with his brother there. The brother took care of the child while they were at Missoula, and relator remained there for about six months. On November 2, 1951, relator married his present wife, Mary Burns, and at this time they have two children. The relator returned the child to the respondents on April 11, 1952, at which time he stated to them that he was not getting along with his wife, and was unable to take care of the child, that his wife did not like the child and absolutely refused to have the child with them.

Thereafter, during the month of December 1952 or January 1953, the relator came to the home of the respondents and asked them if they would like to adopt the child. According to the respondents he stated at that time that he was satisfied his wife did not want the child and that it appeared to him that his difficulties with his wife would never be settled and that he was on the verge of divorcing her. Mrs. Groshelle testified that she informed relator at that time that she thought that he had to have the child's mother's permission, and that if he would get hold of his former wife, that they were interested in adopting the child; that they definitely wanted him. It further appeared from respondents' testimony that four days later relator came to the house again and wanted to know if they had papers fixed up but was informed they had to have the signature of his former wife.

The relator testified that about December 1952 or January 1953 he went to the respondents and asked them if they wanted to adopt the child but he was advised by them that they did not want to. Relator stated that the reason he went to see the respondents about adopting the child was because his wife Mary and he were not getting along and were on the verge of divorce and he felt very despondent about it.

While there is a conflict in the testimony as to this conversation, it is undisputed that relator made no effort to take the child from the custody of the respondents until about the third or fourth day of August of 1954 when he informed the respond-

ents he was going to take the child back. The respondents refused to surrender the child to the relator and this action was instituted on September 14, 1954.

The testimony is undisputed that the relator never at any time during the period that the respondents had the child, being from April 11, 1952, to the time of the trial, paid the respondents any money for the care and support of the child, though relator does claim that the pay for certain work he had done for the respondents was to be credited to the support, but this is denied by respondents.

Ambrose Silvernagel, former husband of the present Mary Burns, testified that he and Mary were married on February 5, 1945, and they were the parents of three children; that they were divorced on October 30, 1951, and he was granted the custody of the three children. There is much testimony in the record with regard to the temperment and character of Mary Burns, particularly with reference to her conduct toward her own children while married to Silvernagel. It is likewise apparent that her present marriage to the relator was not harmonious for a considerable period of time. No purpose would be served by a detailed review of this evidence.

It is undisputed that the respondents are respectable people, maintain a good home and have given excellent care to the child at all times since it has been in their custody.

Following the delivery of the child to the respondents on April 11, 1952, the relator has evidenced little, if any, further interest in the child and his course of conduct, judged by the standard of a parent, has been one of complete indifference.

The court below found that the relator and his present wife were not proper and fit persons to be awarded the custody of the child, nor would the welfare and best interest of the child be served by permitting its custody to be returned to the relator and, necessarily, his present wife; that respondents have provided a good home for the child, without compensation, upon the request of the relator since April 11, 1952, at which time the custody had been voluntarily delivered to them by the re-

6

lator; that relator requested the respondents to adopt the child and that respondents agreed to adopt the child but because of inability to obtain the written consent of the natural mother, her whereabouts being unknown, the adoption proceedings had not been concluded; that to all intents and purposes from the time such request for adoption was made and such agreement was had, the respondents considered the child as their child and the relationship of parent and child existed between the respondents and the child; that the child had continued to reside in the home of the respondents as a member of their family, without objection and without any claim of right of custody of the child by the relator until this proceeding was commenced; that thereby the relator waived the right to the custody of the child and was thereby estopped from claiming right of custody as against the respondents; and the court ordered that the custody of the child be continued in the respondents.

The specifications of error claimed by the appellant, relator below, briefly stated, were that the court erred in awarding custody of the child to respondents as against appellant, the natural father of the child; in finding that the best interests of the child would be served by respondents having his custody; that appellant is not a fit and proper person to have custody of the child and that appellant waived his right to custody or is estopped from claiming such right of custody. These alleged errors are argued by the appellant together and will be so considered in this opinion. In addition, error is claimed in refusing a continuance to the appellant and in denying his motion for a new trial.

Referring first to the four specifications of error first hereinbefore set forth, this court has many times expressed itself in matters of like import that the paramount consideration for the court is the welfare of the child. Ex parte Bourquin, 88 Mont. 118, 290 Pac. 250; State ex rel. Veach v. Veach, 122 Mont. 47, 195 Pac. (2d) 697; Haynes v. Fillner, 106 Mont. 59, 75 Pac. (2d) 802; Wells v. Stanger, 123 Mont. 26, 207 Pac. (2d) 549.

At the outset the relator is the father of four children, whose custody was awarded to a former wife in a divorce action and whose present whereabouts he does not know, for whose care he was ordered to pay the sum of $150 per month, for non-payment of which he was charged in the courts and given a suspended sentence, and admits that he has not paid anything toward their support since 1951.

His present wife is the mother of three children, by a prior marriage, whose custody was awarded to her former husband in a divorce action. The record is replete with testimony showing the complete disregard of his son, being the child in question here, by the appellant, and a course of conduct in previous years by his present wife in regard to her own children which certainly was not compatible to their welfare. The court below observed the various witnesses who testified in this cause and was extremely diligent in ascertaining the facts from all witnesses, and we are not disposed to disturb his findings.

As we stated in Oberosler v. Oberosler, 128 Mont. 140, 272 Pac. (2d) 1005, 1007, ''The matter was one that rested in the discretion of the trial court and we are not disposed to interfere with that discretion where, as here, there is no clear showing of its abuse.''

Turning now to the specification of error having to do with the refusal of the court to grant a continuance to the appellant and relator. The relator presented his case and rested; the respondents presented their case and rested; the relator then presented his rebuttal. In his rebuttal the relator described instances of having had the custody of the child for a visit during the period of time from April 11, 1952, to the time of the trial, and upon surrebuttal Mrs. Ruth Groshelle, one of the respondents, testified that the relator had never had the child from April 11, 1952, up to the time of the trial except upon one occasion when he borrowed her husband's truck and took the child with him and was gone about one-half hour. This testimony merely contradicted testimony given on rebuttal by the relator. At the conclusion of the surrebuttal the relator's

counsel requested a short continuance to endeavor to locate witnesses who would know whether or not the relator had the child in his home on any occasion during the period of time in question, stating that they would like to be able to do a little "scouting" to find out if they could obtain such testimony. The court advised that it was a matter brought out on the relator's own testimony and the court doubted that he should have a continuance to go into it since it had already been testified to by relator's own witnesses, and that while the matter would have been proper rebuttal, yet the relator had rested his rebuttal and the surrebuttal injected no new matter and merely covered matters brought out on rebuttal by the relator. Certainly there was no reason to grant a continuance for the purpose requested by the relator. He had presented his case and rested and we find no error in the refusal of the court to grant a continuance for the purpose requested.

As to the final specification of error claimed by the relator, ▮ being the denial of a motion for a new trial, he argues that appellant was misled as to the basis of the claim of respondents to the child, that the claim of abandonment based upon the adoption discussion of December 1952 or January 1953 was not raised until respondents testified at the hearing, and that this constituted "accident or surprise, which ordinary prudence could not have guarded against". However, the record shows that the first time any surprise was asserted by the appellant was in connection with his request for a continuance, heretofore discussed, and such mention at that time only had to do with the child having been in the custody of the relator for visits during the period of time it was left with the respondents. Even if the testimony referred to in the affidavit accompanying the motion for a new trial had been presented in the lower court it would present no issue which was not then before the court by reason of testimony of other witnesses. We find no error in the court's denial of the motion for a new trial.

Since the trial judge does not appear to have abused his discretion, the judgment is affirmed.

MR. JUSTICES CASTLES, BOTTOMLY, ANGSTMAN and ADAIR, concur.