BRUCE VAIL, Plaintiff and Respondent, *v.* CUSTER COUN-TY, et al., Defendants and Respondents, and TONGUE RIVER & YELLOWSTONE RIVER IRRIGATION DIS-TRICT, a Public Corp., Defendant and Appellant.

No. 9362.

Submitted April 30, 1957. Decided September 27, 1957.

315 Pac. (2d) 993.

Mr. Ralph J. Anderson, Helena, Mr. P. F. Leonard, Miles City, for appellant.

Mr. Hugh J. Lemire and Mr. Roland V. Colgrove, Miles City, for respondents.

Mr. Anderson and Mr. Lemire argued orally.

MR. JUSTICE CASTLES:

This is an appeal by the Tongue River and Yellowstone River Irrigation District, defendant and cross-complainant in the court below and hereafter referred to as the District, from a judgment and decree of the district court of Custer County, in favor of the plaintiff and cross-defendant, Bruce Vail, hereafter referred to as the plaintiff, and in favor of the defendant and cross-defendant, Custer County, Montana, hereafter referred to as the county, in an action to quiet title to certain lots in Richland Addition, a platted townsite in Custer County adjacent to the City of Miles City, Montana.

The plat of Richland Addition was officially filed in Custer

County on December 30, 1911, dividing acreage into blocks and lots to form a suburban residential addition out of lands within the District. To one lot, plaintiff claims fee simple title by prescription. To all other lots, he grounds his title on tax deeds from Custer County. Actually plaintiff's ownership is not questioned. Rather, the dispute is whether plaintiff holds title in fee simple or clouded by the lien of special assessments for water charges.

The District argues that the county is liable to it for failure to collect these special assessments at the time they were due. They were purportedly assessed to meet annual payments on principal and interest on the District's bonds and annual maintenance and repair of its irrigation system. They cover the years 1921 through 1926. There is no dispute as to any assessment subsequent to these years. In passing, it is observed that the District's bonds have long since been fully retired.

The district court sustained plaintiff making its own findings of fact and conclusions of law quieting plaintiff's title in fee simple and denying all liability against Custer County. Thereupon the District appealed.

We note in passing that when the present owner was asked why he objected to paying these old assessments, he answered: "They should have been collected years ago." In effect, his reply could well serve as a summation of this opinion.

During each of the years beginning with 1921 and continuing through 1926, the commissioners of the District purported to assess all of Richland Addition,—whether lots, blocks or acreage tracts and no matter by whom owned, in care of one R. H. Daniels, who appears in the title chain as the secretary and treasurer of the Holt Realty Company, grantor to the C. B. Towers Company, platter of Richland Addition. Except that the Holt Realty Company was a prior owner of some of the land later platted, just what possible connection R. H. Daniels might have had, if any, with the lots here involved does

not appear, but it is clear that R. H. Daniels was not the owner of these lots at any of the times here discussed.

The assessment appears in the District's exhibit A3, 1 through 6, merely as "Richland Addition (lot owners not given) c/o R. H. Daniels Miles City." Acreage is given by quarter section and total. The 1921 assessment adds "Fred R. Savage, F. Francis and H. C. Plimpton, Trustees," but this does not appear thereafter. Some years, the total assessed is given by "sinking fund" (payment on principal), interest and "general fund"; other years not. The 1921 assessment gives the total as 125.23 acres, whereas the 1926 assessment gives the same total as 130.33. And as a source of additional uncertainty, immediately preceding the Richland Addition entry we find another reading: "Residence Park Add'n (Dickinson & Gillespie, St. Paul, R. H. Daniels local agent. (Owners at time of platting.) Lot owners not given".

To repeat, these assessments were not broken down as to lots and blocks, nor as to the current ownership. No tax notices covering these assessments were ever sent to the property owners. The annual list covers about twelve columned pages. Each was certified by the president of the board of commissioners of the Irrigation District and sent to the county clerk, the proper officer to receive irrigation district assessment lists. But from 1921 through 1926 the purported assessments of Richland Addition were never entered in the county assessment books nor were any of these purported special assessments ever collected.

It would have been entirely possible to have made individual water assessments. During the same years, 1921 through 1926, state and county general taxes were levied in exact amounts on the various individual lots in Richland Addition and against the various individual owners by name. Whenever these general taxes were not paid, Custer County acquired tax title to the lots. Except lot 3 of block 26, for which plaintiff claims title by prescription, the lots so acquired by Custer County in Richland Addition include all lots now owned by plaintiff,—

namely: Lots 1, 2, 4, 11 and 14 in block 26 and lots 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 14 and 16 in block 35. It is from these very tax deeds to these lots that plaintiff deraigns his title. But as stated, these general tax proceedings did not include irrigation special assessments.

On January 19, 1922, prior to the above general tax proceedings under which, except for lot 3, plaintiff asserts fee simple title, Custer County issued a purported certificate of tax sale, No. 1568, to the District for all of Richland Addition. The certificate is based on the District's 1921 assessment and the moneys claimed due under it. The total amount assessed is $311.95. Present owners and their predecessors have never redeemed from this sale. Nor has the District ever applied for a tax deed. However, under our holding, the assessment is totally ineffectual, for, as above stated, it covered the entire Richland Addition and it described the property struck off to the defendant Irrigation District as a whole and by forty acre tracts, as follows: SW¼ SW¼, Sec. 26, T. 8 N., R. 47 E.M.M., 38.18 acres, SE¼ SW¼, Sec. 26, T. 8 N., R. 47 E.M.M., 39.09 acres; NW¼ SW¼, Sec. 26, T. 8 N., R. 47 E.M.M., 9.78 acres; SE¼ SE¼, Sec. 27, T. 8 N., R. 47 E.M.M., 38.18 acres, not by lot and block and not by individual ownership. Neither did the certificate state what portion of the aforesaid amount of $311.95 would be chargeable against individual lots within Richland Addition.

Some twenty years later, during 1949 and for the first time, the District procured a breakdown of its purported 1921 through 1926 special assessments, prepared for the Custer County treasurer by a Miles City abstractor and including the lots involved in this present litigation. The Custer County officials adopted this breakdown and attempted to collect the moneys then claimed due. The then owners of the lots now involved in this litgation refused to make payment.

Prior to September 21, 1940, plaintiff's predecessors in interest entered into the actual possession of lot 3 in block 26 of Richland Addition, claiming this lot as their own. The dis-

trict court found that since that date they and their successors have been continuously in actual, open, notorious, hostile and exclusive possession and occupancy of lot 3, and have paid all taxes and special assessments since that date levied thereon.

The District cites sixteen specifications of error, all of which go into the trial court's findings of fact and conclusions of law and to its judgment and decree sustaining plaintiff's fee simple title and denying liability on defendant Custer County. The material facts are not in dispute. It is merely a problem of how the law shall be applied to these facts. The problem will be resolved once the validity or invalidity of the 1921 through 1926 attempted annual special assessments is determined. Except as to whether or not plaintiff may continue receiving irrigation water, the regularity or irregularity of these assessments is the controlling factor on this appeal. Our decision on this point is intended to control all other contentions and arguments here made which merit consideration.

The plaintiff and the county take the position that the special assessments made from 1921 through 1926 were invalid because the property involved was not assessed in specific amounts by lot and block and by ownership. During these years section 7235, Revised Codes 1921 (now R.C.M. 1947, section 89-1804, as amended), so far as it is applicable, then read as follows:

"On or before the second Monday in July each year the board of commissioners of each irrigation district in this state shall ascertain the total amount required to be raised in that year for the general administrative expenses of the district, * * * and *shall levy against each forty-acre tract, or fractional forty-acre tract of land in the district (or where lands shall be owned and held in twenty-acre tracts or less, then against each such tract),* that portion of the said amount so to be raised which the irrigable area of such tract bears to the total area of all of the irrigable lands in the district. * *

"*In the event that the ownership of any tract of land in the district shall be divided after any tax or assessment against*

*the same has been levied, each or either of the owners* of such divisions shall be entitled to have such tax or assessment equitably apportioned to and against such divisions, so that *each such owner* shall be enabled to pay such tax or assessment against his portion of such tract, and have the same discharged from the lien thereof.'' Emphasis supplied.

The above section 7235, Revised Codes 1921, was amended by section 19, chapter 157, Laws of 1923, to read as follows, so far as is pertinent to this matter:

''* * * *and shall levy against each forty-acre tract, or fractional lot as designated by the United States public survey, or platted lot, if land is subdivided in lots and blocks (or where land shall be owned in less than forty acre tracts or in less than the platted lot, then against each such tract) of land in the district * * *''.* Emphasis supplied.

By comparing the 1923 amendment with the law in existence in 1921, it is immediately seen that in its 1923 amendment the legislature spelled out the requirement of assessment by lot and block implied by the 1921 law.

In making the purported assessments did the defendant Irrigation District substantially comply with the statute then in existence? We hold that it did not.

While technically we are dealing with a special assessment ██ certified by an irrigation district, the problem under consideration lies within the field of tax litigation. As stated, the appeal is prosecuted from a judgment founded on the trial court's own findings of fact and conclusions of law. Therefore two elementary principles must govern our discussion: first, that as such, an appeal presumes no error; second, that taxation is *in invitum* and that taxing statutes are to be construed *stricti juris*. Both principles have been enunciated many times by this court.

As to the presumption of regularity in the trial court, see Rumney Land & Cattle Co. v. Detroit & Montana Cattle Co., 19 Mont. 557, 49 Pac. 395; Toole v. Weirick, 39 Mont. 359, 102 Pac. 590, 133 Am. St. Rep. 576; also the phrasing of Mr.

Justice Holloway in Dover Lumber Co. v. Whitcomb, 54 Mont. 141, 149, 168 Pac. 947, 949, to the effect that "The trial court found for the plaintiff, and we indulge the presumption *in limine* that the conclusion reached is justified." See also R.C.M. 1947, section 93-3909 (inconsequential error must be ignored); Marcellus v. Wright, 61 Mont. 274, 202 Pac. 381; Gilna v. Barker, 78 Mont. 357, 254 Pac. 174; Perry v. Maves, 125 Mont. 215, 217, 233 Pac. (2d) 820; Koger v. Halverson, 125 Mont. 560, 242 Pac. (2d) 273, with many citations; and State ex rel. Burns v. Groshelle, 131 Mont. 1, 306 Pac. (2d) 675.

As to the rule of strict construction in tax matters, Mr. Justice Holloway in City of Lewistown v. Warr, 52 Mont. 353, 355, 157 Pac. 953, 954, stated that "All proceedings which have for their ultimate object the subjection of property to the imposition of a tax are *in invitum,* and before property can be held subject to the burden, it must be described with sufficient certainty that the owner cannot be misled. 37 Cyc. 1051."

The rule was later aptly restated in State ex rel. Tillman v. District Court, 101 Mont. 176, 181, 53 Pac. (2d) 107, 109, 103 A.L.R. 376, in these words:

"We start our investigation of the question presented with the full understanding that 'all proceedings in the nature of assessing property for purposes of taxation, and in levying and collecting taxes thereon, are *in invitum,* and must be *stricti juris'* * * *".

This rule is taken from Perham v. Putnam, 82 Mont. 349, 267 Pac. 305, quoting from Weyse v. Crawford, 85 Cal. 196, 24 Pac. 735, and is still the law.

We have pointed out that the applicable statute, section 7235, Revised Codes 1921, required assessment in such form "that *each such owner* shall be enabled to pay such tax or assessment against his portion of such tract * * *". Emphasis supplied. This statute looks to assessment by individual ownership to ef-

fect individual property tax liens and it intends individual responsibility for payment of tax.

In this state it has been decision law since State v. Camp Sing, 18 Mont. 128, at page 149, 44 Pac. 516, at page 521, 32 L.R.A. 635, 56 Am. St. Rep. 551 (decided April 6, 1896), that "* * * all taxes are levied upon persons, and not upon property. * * * strictly speaking, the property which the person owns is used to determine the amount of the tax which he shall pay; but it is the person who, after all, pays the tax, and not the property." The tax *sale* is the proceeding *in rem*.

The record shows that the District's purported special assessments were made *en bloc,* not individually. From 1921 through 1926 they were sent to the aforesaid R. H. Daniels, implying he or someone he represented was the owner of the entire platted Addition. Remembering that it was platted before 1912, this assumption as to Daniels' ownership would require that not a single lot had been deeded of record in the entire Addition during the first fourteen years after its platting. The record establishes that the District's commissioners certify one assessment annually against Richland Addition as a unit. This was forwarded to the Custer County clerk. All acreage owners outside of Richland Addition were listed, but no lot owners therein. The treasurer of Custer County then sent out just one tax notice, covering the entire Addition, directing it in care of said R. H. Daniels, an individual not even shown to be an owner of the lots here in question. Undoubtedly such a shotgun levy saved work, but unfortunately for the defendant District it preserved no special assessment lien.

In addition to the 1921 and 1923 statutory directions above-noted and the requirement that land to be taxed "must be described with sufficient certainty that the owner cannot be misled." City of Lewistown v. Warr, supra. Other authority amply supports the ruling here made.

In addition to the foregoing discussion concerning the in-

214

sufficiency of the purported assessments, this court in Hilger v. Moore, 56 Mont. 146, 165, 182 Pac. 477, 480 said:

"When our Constitution was prepared and ratified, the term 'assessment' and the term 'taxation' each had a definite, well understood meaning. *Assessment was the process by which persons subject to taxation were listed, their property described, and its value ascertained and stated.* Taxation consisted in determining the rate of the levy and imposing it. * * * This has been the history of our revenue legislation from the time Montana was organized as a territory, and the framers of our Constitution understood these words and used them accordingly." Emphasis supplied. This phrasing from Hilger v. Moore, supra, is quoted with approval in Butte Electric Ry. Co. v. McIntyre, 71 Mont. 21, 227 Pac. 61.

As stated above, the charges made by irrigation districts are special assessments not taxes, although they are administered and collected in the same general manner as taxes. State ex rel. Malott v. Board of County Commissioners, 89 Mont. 37, 82, 296 Pac. 1. It is elementary that this requires assessment to individual owners by individual ownership. It was not done.

"An assessment should ordinarily be made to the owner of record, and statutes so provide in many states * * * Such statutes are mandatory so that an assessment to one not the owner makes the assessment void * * *". 3 Cooley, Taxation, section 1096, pages 2216, 2217 (4th Ed.).

Our statute so providing was section 2002, Revised Codes 1921, now R.C.M. 1947, section 84-406, as amended. Its phrasing is: "* * * must assess such property to the persons by whom it was owned * * *".

Only individual assessment by individual ownership will satisfy R.C.M. 1947, section 84-406, the statute above-cited, and the ruling in City of Lewistown v. Warr, supra, decided in 1916, which requires that property must be "described with sufficient certainty that the owner cannot be misled".

Assuming a valid assessment, it is settled by statute in Montana that "When land is sold for taxes correctly imposed as

the property of a particular person, no misnomer of the owner, or supposed owner, or other mistake relating to the ownership thereof affects the sale or renders it void or voidable." R.C.M. 1947, section 84-4180. See also Cullen v. Western Mortgage & Warranty Title Co., 47 Mont. 513, 524, 134 Pac. 302; County of Musselshell v. Morris Development Co., 92 Mont. 201, 210, 11 Pac. (2d) 774; Sutter v. Scudder, 110 Mont. 390, 393, 103 Pac. (2d) 303. But to render this statute applicable here, we must assume a valid assessment, the very question which is the crux of the dispute in this case. Here we have no mistake of ownership and no misnomer; the owners were not misnamed; they were never named at all.

Under the foregoing authorities, the special assessment attempted by the Irrigation District is void. It created no lien. This being determined, the purported tax sale certificate No. 1568, issued January 19, 1922, is likewise void. It is based on an insufficient assessment.

The District argues that the owners could not have been misled, because the record reveals that many of the special assessments, other than those involved herein, have been paid. Be that as it may, these payments appear to have been made *subsequent* to the previously mentioned breakdown in 1949. Prior to that, apparently no one, particularly the District, troubled to determine what special assessment was due from each lot owner. This is established by defendant's Exhibit A1, introduced by the county, a form letter prepared by the treasurer of Custer County with the help of the county attorney. According to testimony of the then treasurer, the letter was sent out from the treasurer's office during the summer of 1949 to "each delinquent taxpayer owing assessments" to the District and produced "a few" payments. It is a demand for payment, was addressed to each owner by name, specifically listed his lots and named an exact delinquent sum. It reads in part as follows:

"In the years 1921 to 1926, both inclusive, an assessment was levied in Richland Addition * * * for irrigation * * * on an

acreage basis of forty acre tracts rather than on the lot basis as platted in the year 1911.

"* * * The original assessment in the years indicated has been broken down to the individual lots *in the manner in which the assessment should have originally been made.*" Emphasis supplied.

It is also urged, that the District was not notified as to the ██ applications for the tax deeds to which plaintiff now relates his title. The applicable statute is now R.C.M. 1947, section 84-4151. It has been amended, but for the purposes of this opinion it is the same as section 2209, Revised Codes 1921. It requires that notice of application for tax deed be given to owners, occupants, mortgagees and assignees of mortgagees. To the extent required, the notice is jurisdictional. Lowry v. Garfield County, 122 Mont. 571, 208 Pac. (2d) 478. Whether or not the District would have been an encumbrancer within the meaning of the statute if the special assessments had been valid and thus entitled to notice need not be decided here. We hold the assessments insufficient to create a lien. Such a holding excludes the District from among parties to whom notice of application for the tax deeds is required. The trial court was correct in so finding.

The presumption of regularity attaching to district courts apply also to public officials. R.C.M. 1947, section 93-1301-7, subdivision 15. Except for its claim that Custer County is liable because the special asessments were not collected, the District has not seriously controverted this presumption of regularity. In fact the District's position must be that the assessments were regular, otherwise it would inadvertently admit it can have no claim against the county for the uncollected special assessments.

Although what we have heretofore said disposes of the matter, another ground for affirming the judgment of the trial court appears from the record. Even if the District's assessments had created a valid special lien, the lien would have been cut off by the county's general tax sale. Except for tax liens subsequently attached and other liens and assessments specific-

ally provided by law, R.C.M. 1947, sections 84-4150, 84-4161, the tax deed creates "a new title in the nature of an independent grant from the sovereignty * * *". State ex rel. City of Great Falls v. Jeffries, 83 Mont. 111, 270 Pac. 638, 640. See also Rosebud Land & Improvement Co. v. Carterville Irr. Dist., 102 Mont. 465, 58 Pac. (2d) 765.

The District argues that the 1921 through 1926 special ▮▮ [6] sessments follow the lots in Richland Addition as a continuing lien. Not so. The sale for general taxes would have extinguished such a lien even if the special assessments had been properly certified. This has long been settled in Montana. It was true under section 2215, Revised Codes 1921, which was in force when the general tax sales were made by Custer County to plaintiff's predecessors. Because of its importance throughout the entire state this matter was exhaustively considered, and so decided, in State ex rel. Malott v. Board of County Commissioners, 89 Mont. 37, 296 Pac. 1. The ruling was approved in the Rosebud Land & Improvement case, supra.

A tax is levied for the general public good. It creates a lien. ▮▮ An assessment is imposed against specific property to defray the cost of a specific benefit to that property, the benefit to be commensurate with the assessment. See discussion in State ex rel. Malott v. Board of County Commissioners, supra, 89 Mont. 37, 82, 83, 296 Pac. 1, quoting from 24 Cal. Jur. section 22, Taxes and Special Assessments, pages 38, 39, citing Montana cases and 1 Cooley, Taxation, section 31 (4th Ed.). Delinquent irrigation district special assessments are not taxes. They are encumbrances. They are cleared by the tax sale.

As to lot 3, block 26, the plaintiff clearly established fee simple title by adverse possession, as the trial court rightly found.

In passing we should observe that moneys collected through ▮▮ delinquent tax sales are in the nature of trust funds, to be held for distribution to the agencies concerned. State ex rel. Malott v. Cascade County, 94 Mont. 394, 22 Pac. (2d) 811. However, this problem is not involved for here none of the

special assessments were ever collected. For this reason State ex rel. Blenkner v. Stillwater County, 104 Mont. 387, 66 Pac. (2d) 788, does not apply, that appeal having involved payment of registered warrants out of the order of their registration, *from moneys already collected.* As was said by the court in Northwestern Improvement Co. v. Lowry, 104 Mont. 289, 305, 66 Pac. (2d) 792, 796, 110 A.L.R. 605, ''We have no quarrel with the conclusion in that case, but the question there is not the question here, and therefore the case is not controlling.''

It is true that in the present case the purported assessment covers Richland Addition in its entirety. The Addition is a platted townsite. From this it might be argued that every owner within the District should assume the 1921 through 1926 special assessments encumbered his lots. Even so, it is still impossible to understand how a reference to the entire Addition would permit a prospective tax sale purchaser to determine whether any particular lots were subject to encumbrance for a particular amount. The argument also disregards completely the lack of assessment notice to the specific owner.

What we have said so far disposes of the contentions of the District as they concern plaintiff. As to the alleged liability on the part of Custer County, it should be remembered such liability is predicated entirely on a valid assessment. We have held no valid assessment was made. It follows that there is no liability on Custer County.

With reference to the assesment for 1921 through 1926 and the collection of water district charges due under it, later attempted on the basis of the abstracter's breakdown made in 1949, the trial court rightly found that this attempted assessment was tardy and was barred by the provisions of R.C.M. 1947, section 89-1804, subdivision 5, which provides:

''Any land or lands which may for any reason have escaped assessment in any previous year or years may be assessed or listed for the omitted years and omitted charges, in any subsequent year at the time of the making of the assessment in and for such subsequent year, *but no such assessment shall be made*

*later than three years after the occurrence of such omission."*
Emphasis supplied.

Because what has been said heretofore sufficiently disposes of this appeal, it is not necessary to discuss further the applicability of the various statutes of limitation.

The present owner of the lots in question has indicated he ▮▮▮ desires to remain with the Irrigation District. He says he needs the water it can furnish to him. The District however argues that if the liens are not valid and the old special assessments can not be assessed or collected, then the lots here in question should be considered as out of the District and the water it provides not available to these lots.

The District's bonds have been retired. Nothing in this opinion is to be understood as meaning that these lots are not liable for current irrigation district assessments for maintenance and repair. It was held in State ex rel. Malott v. Board of County Commissioners, supra, 89 Mont. 37, at page 95, 296 Pac. 1, at page 19, which is the controlling case in this matter that "The lands remain liable, however, to assessment for maintenance and repairs." From this it follows that plaintiff's lots may continue to receive the benefits of the water upon plaintiff's paying the charges therefor.

If the defendant Irrigation District be aggrieved in this matter, then it should be said that the administrative mistakes made by the District's commissioners are the errors of the District and necessarily its sole concern. At this late date the liens asserted by it may not be fastened on the lots in question. See Witter v. Phillips County, 111 Mont. 352, 356, 109 Pac. (2d) 56.

At the beginning of this discussion, we noted that taxes are *in invitum* and tax legislation is to be construed *stricti juris.* We also noted that, *per se,* an appeal presumes no error in the trial court. Guided by these principles we are not at liberty to substitute our judgment for that of the trial judge where, as here, there is ample evidence supporting his findings. We find no reversible error in the record. The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ANGSTMAN and ADAIR, concur.

MR. JUSTICE BOTTOMLY:

I concur in the result but not in all that is said in the foregoing opinion.